# CHARLESTON·

## WILSON *et al* v. YOUST *et al*.

Submitted February 10, 1897—Decided November 17, 1897.

1. OIL—*Realty.*

    Petroleum oil, as it is found in the cavities of the rock, is part of the realty, and embraced in the comprehensive idea which the law attaches to the word "land." (p. 834.)

2. GUARDIAN AND WARD—*Sale—Lease.*

    The only manner in which a guardian can lease or sell the land of his ward for the purpose of its development, or any other purpose, is in the manner prescribed by statute, under a decree of the court. (p. 834.)

3. TENANT FOR LIFE—*Oil—Remainder Man—Lease—Sale.*

    The petroleum oil underlying a tract of land which has been devised to a life tenant who is in possession, and which is to go to certain infant children after the decease of the life tenant, may be sold, upon the petition of the guardian of said infants, under the provisions of chapter 82 of the Code, or leased; and the life tenant will be entitled to the interest on the royalty during the continuance of the life estate, and then the residue or corpus of the royalty will be paid to the remainder-men. (p. 835.)

4. OIL—*Lease—Sale.*

    An oil lease, investing the lessee with the right to remove all the oil in place in the premises, in consideration of his giving the lessors a certain *per cent.* thereof, is, in legal effect, a sale of a portion of the land, and the proceeds represent the respective interests of the lessors in the premises. (p. 839.)

Appeal from Circuit Court, Marion County.

Bill by Thomas J. Wilson and others against Susanna Youst and others. From a decree dismissing their bill, plaintiffs appeal.

*Reversed.*

John Bassel, Charles Powell and W. P. Hubbard, for appellants.

John W. Mason, for appellees.

English, President:

J. D. Youst, by his last will and testament, bearing date on the 29th day of November, 1881, devised his home tract of land, situated in Marion County, W. Va., to his wife, Susanna Youst, during her natural life, and at the death of said Susanna Youst said tract of land was devised to Hermenia Wilson, the wife of Alpheus M. Wilson, during her natural life; to be held by her free from the control of her husband, Alpheus Wilson, as her separate property and estate, and to descend to her heirs at her death; stating in said will that it was his intention to give said home tract of land to his wife for and during her life, and after her decease to the said Hermenia C. Wilson for and during her life, and at her death to descend to her heirs, but with the following charge, limitation and direction, viz.: That if the said Hermenia C. Wilson should not survive his wife, so as to come into possession of said home tract of land, and dying during the lifetime of his wife, should leave, surviving her (said Hermenia C. Wilson) no child or children, nor the descendants of any children, then, instead of said tract of land going to the heirs of Hermenia C., he directed that one half of said home tract of land should, at the death of his wife, go to, and be the property of, her said husband, Alpheus M. Wilson, if living, and the other half to the heirs of his sister, Eliza Wade, and the heirs of his deceased brother, Nicholas B. Youst, by his first wife, *etc.*

This will was duly admitted to probate on the 14th day of March, 1889. Alpheus M. Wilson died on the 29th day of November, 1891, and left surviving him, by his wife, Hermenia, three children—Thomas J., Jehu D., and Clarence L. Wilson. Another child (Stella May Wilson)

was born January 11, 1891, and died in April, 1892. After the death of her husband, Alpheus M. Wilson, his widow, Hermenia, was married on the 8th day of June, 1893, to one James W. Powell, by whom she had one child, named Minnie C. Powell, and died in November, 1893, leaving surviving her, her husband, said James W. Powell, and four children—three by the first husband, and one by the latter. On the 12th day of July, 1890, the said Susanna Youst, and Hermenia C. Wilson and A. M. Wilson, her husband, and Alpheus M. Wilson, as guardian of Thomas J. Wilson, Jehu D. Wilson, and Clarence L. Wilson, infant children of said Hermenia C. Wilson, leased said tract of land, containing two hundred and fifty-five acres, more or less, to the firm of C. E. Wells & Co., for the purpose of mining and operating thereon for oil and gas, for the consideration of one-eighth royalty for all oil removed, and two hundred dollars a year for the gas from each and every gas well drilled on said premises. On the ——— day of November, 1890, the said Alpheus M. Wilson, as guardian for Thomas J. Wilson, Jehu D. Wilson, and Clarence L. Wilson, infant children of Hermenia C. Wilson and Alpheus M. Wilson, filed a petition in the circuit court of Marion county, pursuant to section 12 of chapter 83 of the Code of West Virginia, praying the sale of the interest of his wards in the oil and gas underlying or contained in said tract of land; and such proceedings were had therein that on the 29th day of November, 1890, a decree was entered by said circuit court directing that said A. M. Wilson, as such guardian, should sell the oil and gas underlying said land, either at public or private sale, by making a lease of said land for oil purposes for a term of years, for which the lessee was to deliver one-eighth, of the oil as rental or royalty, one-third of which eighth was to be delivered to the said three infants or their guardian. It appears that in pursuance of said decree the guardian of said infants executed a lease of said land, or of the infants' interest in the oil therein, to C. E. Wells and others, who subsequently assigned said lease to the South Penn Oil Company, and reported said lease to the court, which was confirmed in December, 1890. It further appears that said South Penn Oil Company, proceeded at once to bore for oil from it; that by the 1st day of June, 1894,

the royalty of one-eighth of the oil obtained from said land amounted in value to the sum of twenty-two thousand dollars. Said Susanna Youst and Hermenia C. Wilson, shortly after the rendering of said decree, assigned two-thirds of said one-eighth of said royalty to one S. B. Hughes, who up to the 1st day of July, 1894, had received about fifteen thousand dollars as the two-thirds of said royalty thus assigned to him.

After the lease of said land for oil purposes was confirmed, another child was born to said Hermenia C. and Alpheus M. Wilson, which was named Stella May, and she was admitted by a subsequent decree of said court to share in said royalty; which last-named child was born on the 11th day of January, 1891, and died in April, 1892. Said Alpheus M. Wilson died on the 29th day of November, 1891. In 1893 his widow intermarried with one James W. Powell, by whom she had one child, Minnie C. Powell; and a few days after the birth of said Minnie C. Powell the said Hermenia Powell died intestate, leaving her husband, said James W. Powell, and four children; and in January, 1894, upon petition filed in the intermediate court, said Minnie C. Powell was admitted as a co-owner in the one-eighth of said royalty. Said Susanna Youst is still living; and the said infant children, Thomas J. Wilson, Jehu D. Wilson, Clarence L. Wilson and Minnie C. Powell, by their next friend, Harrison Manley, filed a bill in the circuit court of said county of Marion, attacking said proceeding as being erroneous and void so far as it was decreed that said infants should share equally with Susanna Youst and Hermenia C. Wilson, and Alpheus M. Wilson, her husband, in the value and production of the oil and gas in and under the land in said petition and exibits described, giving to said infants the one-third of said royalty; claiming that, said oil being part of the real estate, the life-tenant during her natural life, was entitled to the interest upon the sum realized as royalty, and that said Hughes, as assignee of the life-tenants, should be compelled to account for all money received by him as royalty in excess of annual interest upon the one-eighth of the oil paid by said lessee, and praying the appointment of a receiver to collect said royalty during the life of said Susanna Youst, and that he be required to pay the interest annually upon the same to

said Hughes, and that the entire principal should at the death of said Susanna Youst be paid to petitioners. The complainants in said bill alleged that the decree of November 29, 1890, was based upon the supposition that the three children of said A. M. Wilson and Hermenia C. Wilson were the owners in fee simple of said land, subject to the life estate of said Susanna Youst and said Hermenia, and ignored the fact that other and different persons might be the heirs at law of said Hermenia at her death; and they further alleged that the circuit court of Marion county had no authority to take from the complainants, and give to said Susanna Youst and Hermenia C. Wilson, any part of the body of said real estate, as was done by said decree of November 29, 1890, and the subsequent decree confirming the sale to said Wells.

The South Penn Oil Company answered said bill, in which answer, after stating the manner in which it claimed the right to the lease of said tract of land for oil purposes, it alleged that said royalty of one-eighth of all the oil produced and saved from said land had been delivered to the Eureka Pipe Line Company, a common carrier of oil, in accordance with the rules and customs of the business, and in accordance with the terms and provisions of said contract, and the proceedings and decrees under which said interests were sold, and under which its right accrued to bore for and produce said oil, and that all of said one-eighth royalty of the said oil as was produced and saved from said land, except so much thereof as may remain unsold and in the custody of the pipe line company, had been delivered to S. B. Hughes, assignee and grantee of Susanna Youst and Hermenia C. Wilson, and to the guardian of said infants, in accordance with the said decrees and contracts. It denies every allegation of said bill that is in any way intended or calculated to raise any question affecting respondent's title to the oil and gas in said land, and the proper delivery and disposal of the one-eighth royalty of said oil to the persons entitled thereto according to the contracts and decrees of the court creating the title in respondent to such oil, and avers that it is not interested, as between the plaintiffs in the case and the defendant S. B. Hughes, as to how the royalty of one-eighth of said oil should be thereafter disposed of, but claims that so much

of said royalty as has been delivered to the said pipe-line company, or has been disposed of by the plaintiffs or the defendant S. B. Hughes, had been delivered in accordance with the provisions and requirements of said contracts and decrees entered by the court in said proceedings, which said decrees, respondent avers, fully protect said respondent in the delivery and disposition of said royalty of oil so made as aforesaid. Respondent further avers that the payment, delivery and disposal of said royalty of oil produced from said land was legally made, delivered and disposed of strictly in accordance with the requirements and provisions of said decrees of said court, to the persons legally entitled thereto under the provisions of said decrees; and it denies the right of the complainants to have said decrees, or either of them, set aside or annulled, or in any manner changed to such an extent as would in any way or manner affect the rights and interests of respondent, or in any way make the said respondent liable to account for such part of said royalty of oil as has been delivered or disposed of by said respondent to said S. B. Hughes under the provisions of said decrees and said contracts and deeds; and said respondent further averred that said orders and decrees under and by which said royalty of oils was delivered and disposed of were pronounced and entered in and by a court of competent jurisdiction, and in and by a court having jurisdiction of the subject-matter disposed of by said decrees. S. B. Hughes and the Eureka Pipe-Line Company also filed answers to said bill, putting in issue its allegations. The cause was heard on the 18th of July, 1894, and the court dismissed the plaintiffs' bill, with costs; and from this decree the plaintiffs obtained this appeal.

The first error assigned by the appellants is that "the circuit court, in its decree of November 29, 1890, erred in directing that two-thirds of the royalty or rental reserved by said decree should be paid or delivered to the said Susanna Youst and Hermenia C. Wilson, the life tenants, for the reason that the oil contained in or under said land was part of the body of the estate, as much as coal or other minerals that might have been contained therein, and the court could not, under the law authorizing a sale of lands held by the infants in a reversion, subject to a life estate, give a part of such real estate to the life tenant; the latter

being entitled only during life to the annual interest upon the fund realized from the sale or disposition of the infants' estate under the decree." In considering the questions raised by this assignment of error, and determining the rights of the respective parties to the record with reference to the matters in controversy, it is necessary to look to the source of their title.

The tract of land containing two hundred and fifty-five acres belonged to Jehu D. Youst at the time of his death; and when we look to his will for the purpose of ascertaining what disposition he made of it, and when he comes to make plain his intention respecting said tract of land, he says: "My intention being to give said home tract of land to my wife for and during her life, and after the decease of my wife to the said Hermenia C. Wilson for and during her life, and at her death to decend to her heirs, but with the following charge, limitation, and direction, viz. : That if said Hermenia C. Wilson should not survive my wife, so as to come into possession of said home tract of land, and, dying during the life of my wife, should leave surviving her (said Hermenia C. Wilson) no child or children, nor the decendants of any children," then, instead of said home tract of land going to the heirs of said Hermenia C., he directs that one-half thereof shall go to said Alpheus M. Wilson, if living, and the other half to his sister, Eliza Wade, and the heirs of his deceased brother, Nicholas B. Youst, by his first wife. Under the plain provisions of this will, then, Susanna Youst took a life estate in the two hundred and fifty-five acre tract of land, and Hermenia C. Wilson took nothing during the lifetime of said Susanna Youst; and, as it appears that said Susanna Youst survived said Hermenia C. Wilson, it follows that said Hermenia never took any interest in said tract of land. The said Hermenia C. Wilson, at her death, however, left the plaintiffs in this suit, her infant children, who, under said will, were entitled to said real estate, subject to the life estate of said Susanna Youst. At the time the death of said J. D. Youst occurred, no lease had been made of said land for oil purposes, and no well had been opened or commenced thereon. In March, 1889, however, said Susanna Youst, Alpheus M. Wilson, and Hermenia C. Wilson executed a paper purporting to be a lease of said land to T. M. Jack-

son & Co., for the purpose of mining and boring for oil, upon the usual terms. On July 12, 1890, the same parties, in their own right, and the said Alpheus M. Wilson, as guardian of his three children, Thomas J., Jehu D., and Clarence L. Wilson (Stella May not having been born), made another lease of said land for oil purposes to C. E. Wells & Co., who assigned to the South Penn Oil Company. At the fall term of the circuit court, 1890, a petition was presented, under section 12 of chapter 83 of the Code, praying a sale of his wards' land; and a decree was entered in pursuance thereof, directing the sale by said guardian, through the form of a lease of the oil under said land, for which the lessee was to pay a rental of one-eighth, which the court directed to be divided equally between Susanna Youst, Hermenia C. Wilson, and her three children,—one-third to the children, one-third to the said Hermenia C. Wilson, and one-third to Susanna Youst. Before the decree of November, 1890, was entered, said Susanna Youst assigned her interest in the one-eighth part of said oil to S. B. Hughes; and on December 2, 1890, Alpheus M. Wilson and his wife transferred their interest in said oil to S. B. Hughes. Now, said Susanna Youst had only a life estate in said real estate, and her rights with reference to said realty were the same as any other life tenant. No well had been commenced or completed on said land at the time of the death of her husband. Under the head of "Mines," 2 Minor, Inst. p. 147 (side page 128), the author says: "A widow is dowable of mines and quarries, but only of those which were opened and worked in the husband's lifetime, although what shall be regarded as an open mine or quarry is not always easy to define. It seems that, if any part of a bed or deposit of mineral matter has been excavated for the purpose of mining, the whole bed, and the strata lying under it, are to be deemed, for dower purposes, an open mine and that new pits or shafts may be sunk for the purpose of reaching it. Nor is it less open because the working has been discontinued. On the other hand, for a dowress or any other life tenant to open new mines is waste, which will be punished with damages, and, as being of irremediable injury to the reversioner, will be inhibited by injunction from a court of equity." In the case of *Crouch* v. *Puryear*, 1 Rand. (Va.) 258, it was held

that "it was not waste, in a tenant in dower of coal lands, to take coal to any extent from a mine already opened, or to sink new shafts into the same vein of coal." So, Washb. Real Prop. p. 208, states the law thus: "A widow is entitled to dower in mines belonging to her husband in fee, which may have been opened during his lifetime, whether within his own land or that of another. * * * But though she may work an open mine, under her claim of dower, to exhaustion, she may not open new ones, even within the land set to her a part of her dower."

The question is whether petroleum oil, as it is found in the rock beneath the surface, is part of the real estate in which it is found; and the same law that applies to the ownership of the surface and soil applies to it. This question has been passed upon by the courts of last resort in different states. Gould, in his valuable work on Waters, in section 291, says: "Petroleum oil, like subterranean water, is included in the comprehensive idea which the law attaches to the word 'land,' and is a part of the soil in which it is found. * * * A lease of land, for the purpose of mining oil, coal, rock, or carbon oil, passes a corporeal interest which is the proper subject of an action of ejectment; and proportionate share of the oil to be produced by an oil well is an interest in land, a parol sale of which is void under the statute of frauds." This question was before the supreme court of Pennsylvania in *Appeal of Stoughton*, 88 Pa. St. 198, and it was there held that: "A guardian has ordinarily power to lease any of his ward's property, of such character as makes it the subject of a lease; but without the approval of the orphans' court he can not dispose of any part of the realty. Oil is a mineral, and, being a mineral, is part of the realty; and a guardian can not lease the land of his ward for the purpose of its development, as it would, in effect, be the grant of the corpus of the estate of his ward." Mr. Justice Gordon, in delivering the opinion of the court, said: "Oil, however is a mineral, and, being a mineral, is part of the realty. *Funk* v. *Haldeman*, 53 Pa. St. 229. In this it is like coal, or any other natural product which, *in situ*, forms part of the land. It, may become, by severance, personalty, or there may be a right to use or take it, originating in custom or prescription, as the right of a life

tenant to work opened mines, or to use timber for repairing buildings or fences on a farm, or for firebote.    Nevertheless, whenever conveyance is made of it, whether that conveyance be called a 'lease' or 'deed,' it is, in effect, the grant of part of the corpus of the estate, and not of the mere incorporeal right.    In the case above cited this is said to be so as to leases of coal lands for the purpose of ming, and there is no reason why the same doctrine should not apply to oil leases."    This question was also before this Court in the recent case of *Williamson* v. *Jones*, 39 W. Va. 231 (19 S. E. 436), and it was held that "petroleum or mineral oil in place is as much a part of realty as timber, coal, iron ore, or salt water"; also, ".'that it is a part of the inheritance, and an unlawful removal thereof is a disherison of him in remainder, constituting waste, which a court of equity, in a proper case, will restrain and enjoin."

The plaintiffs in the case under consideration do not appear to be seeking to set aside the sale or lease of their interests in the two hundred and fifty-five acres of land in controversy, but they claim that the said Susanna Youst, being entitled only to a life estate in the land, had no right to bore wells and take petroleum oil from the land, and, not having that right herself (when no well had been bored thereon in the lifetime of her husband), as a matter of course she could not assign that right to any other person.    Susanna Youst survived Mrs. Hermenia Wilson, and for that reason said Hermenia took no interest in the land or the oil contained therein.    But while it is true that said Susanna Youst was not entitled to any portion of the oil contained in the land, and could not bore a well for the purpose of developing the same, yet she was entitled to the surface (that is, to its possession and use) during her lifetime, and could prevent any person from entering thereon for the purpose of drilling a well for oil or gas; and although this fact would not prevent the remaindermen, through their guardian, from filing a petition, under section 12 of chapter 83 of the Code, asking a sale of the oil underlying said land, and obtaining a decree for the sale thereof, upon a proper case being presented to the court, yet such decree would be useless in the absence of the consent of the life tenant, Susanna Youst, that the

party to whom the oil was sold might enter upon her possession for the purpose of putting down such wells as might be necessary to bring the oil to the surface. At the time of entering this decree the said Susanna Youst and Hermenia C. Wilson were before the court, as well as the guardian and guardian *ad litem* for the infants; and the said Susanna Youst and Hermenia C. Wilson consented that the petitioners might share equally with them in the value and production of the oil and gas in and under the land in their petition and exhibits described (that is, that said petitioners should have an estate in *præsenti* of an undivided one-third of said oil and gas in and under said land,—the said Susanna Youst one-third, and the said Hermania C. Wilson one-third.) It is stated in the petition filed by A. M. Wilson, guardian for petitioners, that oil had been found in paying quantities on lands adjoining said two hundred and fifty-five acre tract, and numerous wells were being put down near to the lines of said tract, which would exhaust the oil underlying the same, and that it was necessary that wells should be drilled at once on said two hundred and fifty-five acre tract, or said remainder-men would be deprived of the oil underlying their land by said adjacent wells; and it is presumed that proof of these facts was before the court. It was also stated that neither petitioners nor said life tenants were pecuniarily able to put down a well, and unless a sale of the oil by means of a lease was made, they would, in all probability, be deprived of the oil therein without compensation, and it would promote the interest of said wards to have a sale of their interest therein; and the court (being of opinion that it was clearly shown by said petition and exhibits and the evidence adduced, considering the consent of Susanna Youst and Hermania C. Wilson and Alpheus M. Wilson, her husband, that the petitioners might together share equally with them in the value and production in the oil and gas in and under the land in said petition described as thereinafter decreed and provided, that the interests of the said infant defendants would be promoted by a disposition or sale of their interest in the oil and gas as prayed for in said petition as thereinafter provided and decreed, and that the rights of no person would be violated thereby) proceeded to decree a sale of said oil and gas, and directed

that the petitioners should have one-third thereof, and Susanna Youst and Hermenia C. Wilson the other two-thirds.

On the first Monday in June, 1894, Thomas J. Wilson, Jehu D. Wilson, Clarence L. Wilson, and Minnie C. Powell, infant children of said Hermenia C. Wilson, who sued by their next friend, Harrison Manley, filed their bill in the circuit court of Marion county against Susanna Youst, S. B. Hughes, the South Penn Oil Company (a corporation), and Harrison Manley, administrator of Hermenia C. Powell, deceased, calling upon the said S. B. Hughes and said South Penn Oil Company to state how much had been paid to or received by said Hughes, as the assignee of said Hermenia C. Wilson and Susanna Youst, or in any other capacity, of the royalty paid by said South Penn Oil Company as the lessee of said land, and praying that the decree of November 29, 1890, might be set aside, so far as it gave or attempted to give to three of the complainants one-third of one-eighth of all oil produced from said land, and gave or attempted to give any portion of said oil to said Susanna Youst and Hermenia C. Wilson, or any other person; also, that there might be a decree against the said S. B. Hughes for all money received by him in excess of what would have been the annual interest upon the entire royalty of one-eighth of the oil produced from said land; also, for a decree requiring that all money paid and received for the one-eighth royalty of oil produced from said land be placed at interest during the life of said Susanna Youst, and directing that after her death the principal of such sums be equally divided between complainants; that said South Penn Oil Company and said Eureka Pipe-Line Company be both enjoined and restrained from paying or delivering to the said S. B. Hughes any further share, price, or portion of said royalty of one-eighth of the oil produced from said land, until such time as the rights of the complainants to said royalty should be ascertained and determined, and that a receiver be appointed to receive, sell and collect the proceeds of said one eighth or royalty of oil produced from said land during the pendency of this suit, or until such time as the rights of the complainants therein might be adjudicated.    Such proceedings were had in this cause that on the 18th day of July, 1894, a final decree was rendered

in the cause dismissing the plaintiffs' bill, and from this decision this appeal was obtained.

The first error relied on by the appellants is that the circuit court erred in its decree of November 29, 1890, in directing that two-thirds of the royalty or rental reserved by said decree should be paid or delivered to the said Susanna Youst and Hermenia C. Wilson, the life tenants, for the reason that the oil contained in or under said land was part of the body of the estate, as much as coal or other minerals that might have been contained therein, and the court could not, under the law authorizing a sale of infants' lands held by the infants in reversion, subject to a life estate, give a part of such real estate to the life tenant, the latter being entitled only during life to the annual interest upon the fund realized from the sale of the infants' estate under the decree; and, second, for holding that such decree was not erroneous as against the appellants, and in dismissing their bill filed to correct said decree.

These assignments raise the same questions, and may be considered together; and, in doing so, let us refer again to the provisions of the will of J. D. Youst, by which he gave this tract of land to his wife, Susanna Youst, during her natural life. After the death of his wife, he gave said tract of land to Hermenia C. Wilson for life, and at her death the same was to descend to her heirs; and in the event that said Hermenia C. Wilson died during the lifetime of his wife, leaving no child, or the descendants of any children, then the one-half of said land was to go to Alpheus M. Wilson, if living, and the other half to the heirs of his sister, Eliza Wade, and the heirs of his deceased brother, Nicholas B. Youst, by his first wife, *etc.* At the time the decree of November 29, 1890, was rendered, both Susanna Youst and Hermenia C. Wilson were living. Susanna Youst was in possession of the land as a life tenant, and was then a widow; and, as we have seen, she had no right to open a mine on the land she held as life tenant, unless the same had been opened in the lifetime of her husband. This, however, had not been done; and, not having the right to open and work a mine that had not been opened in the lifetime of her husband, it follows that she could not confer that right upon another. Oil in place

under the land, as we have seen, has been held in this State to be a part of the realty, and as much so as timber, coal, iron ore or salt; that it is a part of the inheritance, and an unlawful removal thereof is a disherison of him in remainder, constituting waste, which a court of equity, in a proper case, will restrain and enjoin. See the case of *Williamson* v. *Jones, supra.* Now, can we sustain the decree of the circuit court of Marion county, rendered on the 29th day of November, 1890 ? Had said court any right to direct a sale of the oil underlying said land, by way of lease, and apportion the royalty arising from said lease equally between the life tenant in possession, the life tenant in expectency, and the remainder-men, who were infants? Could the court change the character of the estate held by the infant petitioners from an estate in remainder to an estate in *præsenti*, and could the court authorize Susanna Youst to receive the product of a mine opened on her estate for life, subsequent to her husband's death, and authorize Hermenia C. Wilson to receive one-third of the product of the oil wells drilled on said land, in which her estate was dependent on the death of Susanna Youst, to which she might never be entitled, and, as the sequel shows, never was entitled, for the reason that her death preceded that of Susanna Youst? These are questions which must be met and answered, in passing upon the validity of the decree of November 29, 1890. Now, if the court could properly decree a sale of the oil underlying this tract of land upon the petition of the infants, and the testimony showing it was to their advantage to make the sale, was it proper that the product of these oil wells (the royalty) should have been divided as it was? What entitled either of the life tenants to one-third of the royalty, and especially Hermenia C. Wilson, who never was entitled to a life estate, she having died before Susanna Youst? A case somewhat similar to the one under consideration is found in 174 Pa. St. 425 (34 Atl. 564), (*Blakley* v. *Marshall*). The syllabus reads as follows : "An oil lease, investing the lessee with the right to remove all the oil in place in the premises, in consideration of his giving the lessors a certain *per centum* thereof, is in legal effect a sale of a portion of the land, and the proceeds represent the respective interests of the lessors in the premises. If the lessors in

an oil lease are life tenants and remainder-men, the life tenants are entitled to the interest on the royalties during life, and at their death the corpus of the fund, made up of the aggregate royalties, goes to the remainder-men.'' And this decision, as I think, propounds the law correctly. If the infants, in pursuance of their petition and the testimony adduced before the court, had the right to have the oil underlying the land in which they are interested as remainder-men sold, to prevent its being drawn from the land by adjoining wells, the law provides where the royalty shall go and what interest the life tenant shall receive. Was the division of the royalty in the manner provided for in the decree complained of, in any manner justifiable on the ground of expediency? That it was not is plainly indicated by the fact that there was no reluctance evinced by Susanna Youst in entering into the arrangement by which she received one twenty-fourth of the oil produced from the wells drilled on said land, as the portion to which she was entitled as life tenant. The fact that Susanna Youst showed no hesitation about leasing her interest in this land is manifest from her conduct in deeding all of her interest in the oil produced from said land to S. B. Hughes on the 26th day of November, 1890, three days before the decree was entered in the circuit court, which, by and with the consent of said Susanna Youst and Hermenia Wilson, allowed the infant children aforesaid to share equally with them in the royalty arising from the oil wells drilled upon said land. Susanna Youst had no right to drill an oil well on the land of her deceased husband, and, not possessing the right herself, she could not confer such right upon another. Neither could she consent to the sale of the oil. In other words, her consent would be utterly futile, so far as it supplied any legal foundation for the action of the court in said decree, in dividing the royalty arising from the oil produced on said land as it was; and yet the decree shows that Susanna Youst was present, by her counsel, consenting to the sale, although she had sold and conveyed all interest she claimed in the oil underlying said land three days before the decree was rendered, to S. B. Hughes.

Now, our statute (section 14 of chapter 83 of the Code) provides that if it be clearly shown by the petition, exhibits, and evidence adduced that the interest of the minor

will be promoted by the sale, and the court be of opinion that the rights of no person will be affected thereby, it may order a sale of the estate, or any part thereof, either public or private, on such terms and in such parcels as may be deemed beneficial to the minor, *etc.* The complainants, however, in their bill, do not seek to set aside the sale for any irregularties in the proceedings of the circuit court in reference thereto, but they claim that, if the court had authority to sell or lease said land for oil and gas purposes, it had no right to decree to said Susanna Youst and Hermenia Wilson, or either of them, any part of the principal of any sum realized from oil produced, or the royalty thereof, from said land, but that the said Susanna Youst, during her life, would have been entitled to receive the annual inserest upon the principal realized from said royalty, and that the plaintiffs, the infants aforesaid, would have been entitled to the principal after the death of said Susanna, and in this contention I am of opinion that the plaintiffs were clearly right (following the decision of the supreme court of Pennsylvania in the case of *Blakley* v. *Marshall, supra*) ; and for these reasons the decree complained of, which dismissed the plaintiffs' bill, must be reversed, with costs, and remanded to the circuit court of Marion county, with directions to ascertain the amount of interest that accrued upon the royalties arising from the oil wells drilled on said land during the lifetime of Susanna Youst, which amount, when so ascertained, is to be paid to the assignee of said Susanna Youst; and after deducting said interest the remainder of the royalty is to be paid to Thomas J. Wilson, Jehu D. Wilson, Clarence L. Wilson, and Minnie C. Powell, plaintiffs in said chancery suit.

*Reversed.*