### BARNES et al. v. KEYS et al.

(127 Pac. 261.)

No. 1833. Opinion Filed July 18, 1912.

On Rehearing, October 23, 1912.

LIFE ESTATES—Mining Lease—Interest of Life Tenants. Where the owners of a life estate and the owners of the remainder join in an oil and gas mining lease, and the lessee develops the lease and produces oil, the life tenants are entitled either to have the royalties invested and to receive the income therefrom, or to receive such a proportion of the royalty as will amount to the present value of an annuity for the life expectancy of the life tenant equal to the interest on the royalties at 6 per cent.

(Syllabus by Rosser, C.)

*Error from District Court, Muskogee County;*
*John H. King, Judge.*

Action by Leander A. Keys and Harry H. Bell against George W. Barnes, Peter Hawkins, William Hawkins, Mack Hawkins, Raichie White, and Pearlie White, for partition. From the judgment George W. Barnes, Sr., Harry H. Bell, and Leander A. Keys bring error. Reversed and remanded, with instructions.

*Preston C. West,* for plaintiff in error Barnes.

*N. A. Gibson, H. C. Thurman* and *T. L. Gibson,* for plaintiff in error Bell.

*W. D. Humphrey,* for plaintiff in error Keys.

*Chas. G. Watts, Bailey & Wyand,* and *Charles A. Moon,* for defendants in error Hawkins.

Opinion by ROSSER, C. This is a partition suit, brought March 10, 1908, by Leander A. Keys and another, against George

W. Barnes, Sr., and others, to partition the allotment of Maria Hawkins, deceased, in which they were jointly interested. On the 31st of October, A. D. 1908, the court entered a decree holding that Leander A. Keys and Harry Bell were the owners of the life estate of David Hawkins in the land, and that the life estate was 80 per cent of the value of the land; that they also owned 19-32 of the fee; that Raichie White owned 1-32 of the fee; and that Peter Hawkins, William Hawkins, and Mack Hawkins each owned 1-8 of the fee; also, that George W. Barnes, Sr., was the owner of a valid oil lease on the land, covering the interest of all the parties, except that of Peter Hawkins. The decree appointed commissioners to partition the land, if partition could be made, and, if not, to apppraise it. The commissioners reported that the land was not susceptible of division, and appraised it. Afterwards, by order of the court, George W. Barnes, Sr., was permitted to buy the land at its appraised value. After the lease was made to Barnes, and before he bought the land at the appraised value he developed it and produced oil, and the royalty due the owners at the time he purchased the land was $18,682.17.

The only question presented here is as to the right of Keys and Bell, owners of the life estate, to share in the royalties from the oil produced. The trial court held that they were not entitled to share in the royalties as owners of the life estate, and awarded them 19-32 of the royalties, as owners of that fraction of the remainder in fee simple. The lease was executed after the death of the allottee by the various heirs and persons who had purchased the interests of some of the heirs. It is settled by a long line of decisions, beginning with *Stoughton v. Leigh,* 1 Taunt. 402, that a life tenant cannot open new mines, but that, where mines are already opened, the life tenant may work them. *Coates v. Cheever,* 1 Cow. (N. Y.) 460; *Lenfers v. Henke,* 73 Ill. 405, 24 Am. Rep. 263; *Hendrix v. McBeth,* 61 Ind. 473, 28 Am. Rep. 680; *Seager v. McCabe,* 92 Mich. 186, 52 N. W. 299, 16 L. R. A. 247; *Wilson v. Youst,* 43 W. Va. 826, 28 S. E. 781, 39 L. R. A. 292; 10 Ballard's Real Prop. sec. 450; *Blakley v. Marshall,* 174 Pa. 425, 34 Atl. 564. The doctrine or theory of these

cases is that the opening of new mines is a permanent injury to the inheritance, constituting waste. In other words, it is held that the minerals are part of the land itself, and that the life tenant has no right to take minerals, any more than he would have the right to sell or dispose of a part of the surface of the land.

But in this case this question is not presented. All interested parties agreed that the land might be leased and that the oil might be produced. The question is, all having agreed that the lease should be made, what interest should each have in the income from the lease? It would seem that their interests would be the same as if that much land had been sold. The life tenant would be entitled to the income from the purchase price; that is, to interest during his life. The remaindermen would be entitled to the whole amount upon the death of the life tenant. This rule is supported by the authorities. In *Blakley v. Marshall*, 174 Pa. 425, 34 Atl. 564, the court said:

"Acting for themselves in their own right as tenants for life, and also as trustees for those in remainder, the plaintiffs executed the lease to N. B. Duncan, 'for the purpose of operating and drilling for petroleum and gas' for the term of fifteen years from August 10, 1894, 'and so long thereafter as oil and gas can be produced in paying quantities.' It was obviously necessary, as well as to the interest of both the tenants for life and the remaindermen, that they should thus unite in the lease, because no practical oil operator would undertake the development of supposed oil territory on the faith of a lease from life tenants only, and for the further and more important reason that, if not promptly developed and worked, the land would soon have been drained of its oil through wells on adjoining lands.  *   *   *

"In support of plaintiffs' claim to the whole of the royalty, etc., much stress was laid on the doctrine of waste; but we fail to see that it has any application whatever to the facts of this case. It is conceded that the oil was produced under the lease made by plaintiffs, in their own right as life tenants and as trustees for those in remainder; and as appears by the opinion of the court, their action as trustees for the remaindermen was with its sanction and approval. It is difficult to see on what principle the *cestuis que trust* should be excluded from participation in the royalty that accrued during the existence of the life estate. Assuming, for the sake of illustration, that they had

been of full age and *sui juris,* and instead of being parties, through their trustees, to an oil lease, they and the tenants for life had united in a conveyance in fee of part of the land; could it, in the absence of any agreement on the subject, be successfully claimed that the life tenants were entitled to the purchase money? We think not.  There is no difference, in principle, between the two cases.  As was held in *Stoughton's Appeal,* 88 Pa. 201, and other cases in same line, oil in place is a mineral, and, being a mineral, it is part of the realty.  An oil lease, investing the lessee with the right to remove all the oil in place, in the premises, in consideration of his giving the lessors a certain per centum thereof, it in legal effect a sale of a portion of the land, and the proceeds represent the respective interests of the lessors in the premises.  If there be life tenants and remaindermen, the former are entitled to the enjoyment of the fund (*i. e.,* interest thereon) during life, and at the death of the survivor the *corpus* of the fund should go to the remaindermen.  This is as nearly a just and equitable distribution as can be made."

This case was followed in *Wilson v. Youst,* 43 W. Va. 826, 28 S. E. 781, 39 L. R. A. 292, and the rule was approved in *Higgins Oil & Fuel Co. v. Snow,* 113 Fed. 433, 51 C. C. A. 267.  The authorities hold that oil is part of the realty until taken from the ground.  *Kelley v. Ohio Oil Co.,* 57 Ohio St. 317, 49 N. E. 399, 39 L. R. A. 765, 63 Am. St. Rep. 721; *Murray v. Allard,* 100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 740; *Williamson v. Jones,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891.  And it follows that the proceeds of the oil belong to the remaindermen, just as the proceeds of the land itself would; but the owner of the life estate would have the right to interest on the royalties produced during his life.

The rule laid down does not conflict with *Duff v. Keaton,* 33 Okla. 92, 124 Pac. 291, in which it was held that a lease for oil and gas mining purposes was not a conveyance within the purview of section 5314, Comp. Laws 1909.  Neither is it in conflict with *Frank Oil Co. v. Belleview Oil & Gas Co.,* 29 Okla. 719, 119 Pac. 260.  That case held that an oil lease did not convey an interest in the oil in the ground, but only conveyed what the lessee might find.  Nor is it in conflict with *Kolachny v. Galbreath,* 26 Okla. 722, 110 Pac. 902, in which it was held that an oil lease did not pass anything that could be subject of eject-

ment or real action.    Nothing in those cases intimates that oil is not part of the realty, and that the proceeds from an oil lease, made by life tenant and remainderman after the death of the ancestor, should not be treated in the same way as the proceeds of the land itself.

In this case it appears that David Hawkins had a life expectancy of about 38 years.    The owners of his life estate, therefore, were entitled either to have all the royalties invested and to receive the income during the life of David Hawkins, or to a sum out of the royalties which, lent at 6 per cent per annum, and exhausting both principal and interest, would give them 6 per cent. on the whole amount of the royalties for the period of the life expectancy.    The amount to be received by each party is capable of exact computation.    It is contended that the court, by the judgment entered October 31, 1908, fixed the proportion the parties were to receive.    That order appears to have been made for the purpose of settling the proportion each should receive out of the land to be divided or sold.    The money from the royalties was apparently not considered in that judgment.    It is likely that the proportion there fixed is about correct; but, as to the royalties, the amount is capable of accurate computation and exact division.

The case should be reversed and remanded, with instructions to enter judgment, either investing or lending the royalties, with the income payable to Keys and Bell during the life of David Hawkins or paying to Keys and Bell as owners of the life estate such a sum as, lent at 6 per cent., and adding the interest each year, will pay 38 annual payments of $1,120.93 each, and will be exhausted upon paying the thirty-eighth payment, and paying the balance to the remaindermen in proportion to their respective interests.    If properly divided, the amounts to be paid the remaindermen, invested at 6 per cent., will amount to $18,682.17 at the end of 38 years.

A calculation of the writer shows that, if the money is divided, the owners of the life estate are entitled by virtue of that ownership to $15,083.57.    The calculation was hurriedly made, and may not be entirely accurate.    Counsel in this case are prob-

ably better mathematicians than the writer, and will not likely have any trouble in getting the exact sum.

By the Court: It is so ordered.

## On Rehearing.

Opinion by ROSSER, C. The motion for rehearing in this case challenges the opinion heretofore rendered, upon the ground that the evidence shows that Peter Hawkins, one of the tenants in common or heirs of the land, did not join in the lease, and that the wells which were drilled were waste as to his rights in the land, and that he should therefore receive the full value of one-eighth of all the oil taken. In taking this position counsel rely upon the case of *Williamson v. Jones*, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891. The rule laid down in the Williamson case seems to be a sound one, but the facts of the two cases are different. In that case it appears that Jones, the lessee, knew of the claim of Williamson to a seven-tenths interest in the land, and it also appears that they sued him in equity to enjoin the production of oil. In the present case the lessee believed that he was getting a lease signed by all the persons holding interests in the estate. The lease was executed by all the adults at that time claiming interest in the estate, and was executed on behalf of the minors by guardian and approved by the United States court.

Upon the trial of the case Peter Hawkins testified as follows:

"Q. You are one of the defendants in this case, are you— one of the owners in the interest of the land of Maria Hawkins? A. I guess so. I leave it to the court. If the court says I am interested, I am. Q. Have you ever claimed any interest in it? A. Well, they all claimed interest in the shares, and they come to me, and I understood I didn't have any; and if the court decides it, it will be satisfactory to me. Q. You don't know really whether you have any interest or not? A. No, sir; I don't."

This is all the testimony upon the question of whether or not Hawkins claimed an interest in the land. It appears from this testimony that he made no claim to the land at the time the lease was made, and it nowhere appears that he made any

effort to assert his rights until this suit for partition was brought. A reading of the entire record indicates that it was not his desire to repudiate the lease, but merely to share in the proceeds to the extent of his interest in the land, in the same way and to the same extent as the other heirs owning an interest in the land. This being true, the former decision of this court is correct, and the former opinion should stand.

It should, however, be considered as corrected in one particular. It is stated in the original opinion that all interested parties agreed that the land might be leased, and that the oil might be produced. This is not a correct statement of the facts. All persons claiming an interest at the time the lease was made agreed that the land might be leased, and that the oil might be produced; but Peter Hawkins did not enter into the agreement, for the reason that at the time of the making of the lease he did not believe he had an interest.

By the Court: It is so ordered.