## JACKSON v. GATES OIL CO.

(Circuit Court of Appeals, Eighth Circuit. March 31, 1924.)

No. 6358.

I. Removal of causes ⬗25(1)—Complaint in suit to cancel oil and gas lease executed by guardian of minor Indian held removable.

The complaint in a suit to cancel an oil and gas lease, executed under Act May 27, 1908, by the guardian of a minor, who was a full-blood Choctaw Indian, *held* to assert claims arising under federal law, and hence, under Judicial Code, §§ 24, 28 (Comp. St. §§ 991, 1010), properly removed to and tried in a federal court.

2. Indians ⬗16(3)—Probate order approving gas lease by guardian of minor Indian held only order required to render lease valid, notwithstanding rule of Secretary of the Interior.

An order of the probate court, approving a gas lease of allotted Oklahoma lands, not including the homestead, executed under Act May 27, 1908, by the guardian of a full-blood minor Choctaw Indian, is the only order required to render the lease valid, notwithstanding provisions of Oklahoma statutes relative to sales of lands of minors, and a rule adopted by the Secretary of the Interior under section 2, purporting to require a probate order authorizing guardian to make a lease, and an order confirming the lease, in view of sections 2 and 6, evincing a clear purpose to empower the Secretary to approve a lease, if in his judgment it is to the best interests of the minor to do so, when executed in compliance with local procedure.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit by Semean Jackson against the Gates Oil Company. From a decree dismissing the suit on the merits, complainant appeals. Affirmed.

H. A. Ledbetter, of Ardmore, Okl. (L. A. Ledbetter, of Idabel, Okl., H. M. Furman and H. E. Ledbetter, both of Ardmore, Okl., and M. F. Hudson, of Idabel, Okl., on the brief), for appellant.

George S. Ramsey, of Muskogee, Okl. (R. A. Hefner, of Ardmore, Okl., Edgar A. De Meules, of Tulsa, Okl., and Malcolm E. Rosser and Villard Martin, both of Muskogee, Okl., on the brief), for appellee.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

LEWIS, Circuit Judge. [1] Appellant brought this suit in a State court to cancel an oil and gas lease on 70 acres of his land, for an accounting for the value of oil taken therefrom (alleged to be $1,200,-000) by appellee as assignee of the lessee, and for a receiver to be put in possession with authority to continue production. On trial in the Federal court his suit was dismissed on the merits. He objected to its removal to that court and the refusal of that court to remand it after removal, both parties being citizens of Oklahoma; and the first question presented here for consideration is that of jurisdiction. The ground for removal to the Federal court was that the complaint on its face, without more, shows that the matter in controversy to be

litigated arises under the laws of the United States, and that a construction and application of those laws are necessary to the final and just determination of the issue which the complaint tenders. This claim on the part of appellee was and is denied by appellant. The answer to these contentions is to be found, of course, in a correct estimate of the complaint. It alleges that appellant is a full-blood member of the Choctaw Tribe of Indians, that he became of lawful age January 20, 1921, that while he was a minor and on August 11, 1913, his guardian executed to one Dings an oil and gas lease on the 70 acres, that the Probate court by an order entered on the same day approved the lease to Dings, that thereafter the lease was presented to the Secretary of the Interior and he approved it by endorsing his approval thereon. The lease is attached to the complaint and by reference made a part of it. It recites that it is made under and in pursuance of the provisions of the Act of Congress approved May 27, 1908 (35 Stat. 312). It is the familiar form of lease used by the Department of the Interior in such cases. It grants, leases and lets to the lessee an exclusive right to prospect for and remove oil and gas from the premises and to occupy for that purpose so much of the surface as may be necessary. It is for a term of ten years from the date of its approval by the Secretary of the Interior, and as much longer thereafter as oil or gas is found in paying quantities. It requires the lessee to pay the royalties, 12½ per cent. of the gross proceeds of all crude oil extracted from the land and a named sum annually on each gas-producing well when used, to the United States Indian Superintendent at Muskogee, Oklahoma. It contains in detail provisions for superintendence by the Secretary, or by some officer to be named by him, of operations under the lease and for forfeiture on conditions named. It bears the recommendation of the Indian Superintendent at Muskogee, the Commissioner of Indian Affairs at Washington, and the approval of the Secretary of the Interior of date November 7, 1913. The complaint further alleges that Dings assigned the lease to appellee and that the Secretary gave his written approval of the assignment, but it is alleged that the lease to Dings was void, because the Probate court was without jurisdiction to make the order approving the lease "without first authorizing the guardian to execute a lease and by advertising and giving notice that a lease would be sold on said lands, and without having said lease sold at public outcry and bids, and the lease so executed not having been advertised for sale, and not having been sold at public outcry and public bids, the order so made on the 11th day of August, 1913, is void." It is then alleged that the Secretary's approval of the lease and its assignment were both without effect and gave no validity to the lease.

The Act of May 27, 1908, is entitled:

"An Act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes."

Its first section, after removing all restrictions on homesteads and allotted lands of those enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors, and also all restrictions on allotted lands (but not

homesteads) of those enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood, reads:

"All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

### Section 2:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the State of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions."

### Section 6, in part:

"That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma."

The proposition that the case stated in the complaint could not be prosecuted to judgment nor defended without construing and giving effect to the Act of May 27, 1908, seems too plain for argument. The rights which the complaint asserts the appellee claims and is exercising could be acquired only under Federal law, and the averments raise the inquiry whether that law was complied with in acquiring those rights. In Osborne v. Bank, 9 Wheat. 738, 824 (6 L. Ed. 204) it is said:

"The appellants say, that the case arises on the contract; but the validity of the contract depends on a law of the United States, and the plaintiff is compelled in every case, to show its validity. The case arises emphatically under the law; the Act of Congress is its foundation. The contract could never have been made, but under the authority of that Act. The Act itself is the first ingredient in the case—is its origin—is that from which every other part arises."

In Cooke v. Avery, 147 U. S. 375, 13 Sup. Ct. 340, 37 L. Ed. 209, it was held that if from the questions involved some right—

"on which the recovery depends will be defeated by one construction of * * * a law of the United States, or sustained by the opposite construction, then the case is one arising under the * * * laws of the United States."

In Railroad Co. v. Mississippi, 102 U. S. 135, 141 (26 L. Ed. 96), it is said:

"That it is not sufficient to exclude the judicial power of the United States from a particular case, that it involves questions which do not at all depend on the Constitution or laws of the United States; but when a question to which the judicial power of the Union is extended by the Constitution forms an ingredient of the original cause, it is within the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved in it,"

—is a proposition too firmly established to admit of further discussion. See Macon Grocery Co. v. Atlantic Coast Line, 215 U. S. 501, 506, 30 Sup. Ct. 184, 54 L. Ed. 300; Hull v. Burr, 234 U. S. 712, 34 Sup. Ct. 892, 58 L. Ed. 1557; Lancaster v. Kathleen Oil Co., 241 U. S. 555, 36 Sup. Ct. 711, 60 L. Ed. 1161; Wellsville Oil Co. v. Miller, 243 U. S. 6, 37 Sup. Ct. 362, 61 L. Ed. 559; Hopkins v. Walker, 244 U. S. 486, 489, 37 Sup. Ct. 711, 61 L. Ed. 1270; Evans v. Durango Land & Coal Co., 80 Fed. 435, 25 C. C. A. 531; McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237.

Section 24 of the Judicial Code (Section 991, Comp. Stat. U. S.) gives to District Courts original jurisdiction of all suits of a civil nature at common-law or in equity, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and arises under the laws of the United States; and Section 28 (Section 1010, Comp. Stat. U. S.) gives to the defendants in such suits, when they have been brought in any State court, the right to have them removed to the District Court for the proper district. Appellee, defendant below, had a right to have the case removed.

The answer also set up the lease, pleaded its validity, and by cross-complaint prayed that appellee's rights as lessee be adjudged and quieted. The court so decreed after dismissing the bill. At the trial appellant's testimony was brief. He established his age as alleged in the complaint, his enrollment as a full-blood Choctaw Indian, and introduced Rule 9 adopted by the Secretary of the Interior in reference to the leasing of lands of the Five Civilized Tribes, reading:

"Where lessor is a minor there must be filed: Certified copy of letters of guardianship. Certified copy of court orders authorizing and confirming lease."

[2] The defendant's proof shows that the lands were allotted to appellant and include no part of his homestead. It was stipulated that the restrictions against alienation of plaintiff's lands covered by the lease have not been removed. There is neither pleading nor proof of fraud in obtaining the lease, nor that its terms are unfair or inequitable to appellant. The question presented to us is, Whether, as alleged in the complaint, the lease was void because the guardian did not first present a petition to the probate court for leave to execute a lease and obtain a probate order authorizing him to do so, and because the guardian did not thereafter advertise that he would sell an oil and gas lease on the 70 acres, and because he did not pursuant to such advertisement, sell the lease at public outcry and then give the lease to the highest and best bidder, after obtaining an approving order from the Probate court. The only action taken by the Probate court, as shown by an exhibit, appears to have been of date August

11, 1913, the same day the lease was executed. The Probate order recites that the petition of the guardian of Semean Jackson, a minor, asking for the approval of a certain lease contract entered into by the guardian with P. C. Dings, dated of that date, came on to be heard. The lands covered by the lease are described, it is recited that the lease was for oil, gas and minerals, and that it appeared to the court that the terms of the lease are reasonable and to the best interests of the minor, and the court being thus fully advised in the premises "doth order and adjudge that the said lease contract bearing date of the 11th day of August, 1913, be, and the same is in all things hereby ratified, confirmed and approved." This order, it is claimed, standing alone and without the prior procedure noted above, was not sufficient to authorize the guardian to lease the minor's land, that the Probate court was without jurisdiction to make that order without having first made the order authorizing the guardian to execute a lease and without a report showing that the lease had been advertised and sold. And so it is contended that the lease was void, and being void the Secretary's approval could not render it valid.

There is no statute expressly prescribing the steps to be taken by the guardian and what orders shall be made by the Probate court in the giving of a lease. It is not unusual to find different and separate statutory procedure for the lease and sale of lands of minors and incompetents. Under such conditions it would hardly be contended that a lease and sale of the lands of a minor or incompetent are in substance the same and that the statutory procedure for one is interchangeable with that provided for the other. And, of course, one statute may embody and cover both, making the procedure for each the same. Appellant's counsel argues that the procedure provided by the State statute for the sale of real estate or personal property of a minor must be applied to the giving of this oil and gas lease, although that statute does not mention leases. The sections of the statute relied on need not be quoted. It may be conceded that ordinarily in the sale of a minor's real estate or personal property all of the steps contended for must be taken, and if any of them are omitted the guardian's deed will be void—likewise the omission of a statutory requirement in the giving of a guardian's lease. Etchen v. Cheney, 235 Fed. 104, 148 C. C. A. 598. The argument is that oil and gas are part of the lands from which they are taken, and to give the right to extract and dispose of them amounts to a disposition of a part of the real estate; and further, if they are not real estate they must be personal property, and therefore the statute relied on must be applied. Decisions of the Supreme Court of Oklahoma are relied on to support the contention: Rich v. Doneghey, 177 Pac. 86, 3 A. L. R. 352, where it is said that though the instrument be denominated a lease, it was in effect a grant in præsenti of all the right to the oil and gas to be found in and produced and removed from the lands. But in that case the question which we have under consideration was not presented at all. There were no probate proceedings for the giving of that lease, the lessor acted sui juris. Hoyt v. Fixico, 175 Pac. 517. It was there held that approval by the Probate court was necessary to render valid a lease given on the conditions named in Sec-

tion 9 of the Act of May 27, 1908. No order whatever was made by the court, none was applied for in the obtaining of that lease; and it was held void. Oil & Gas Co. v. Branine, 175 Pac. 533, 3 A. L. R. 344. There again the lessors were not under disability or restrictions, and the question we have was not involved. Barnes v. Keys, 36 Okl. 6, 127 Pac. 261, 45 L. R. A. (N. S.) 178, Ann. Cas. 1915A, 515, where it was held that an oil and gas lease is in legal effect a sale of a portion of the land; but in that case there was no question about the validity of procedure in probate, there was no such procedure. That was a partition suit. There were both life tenants and remaindermen, and the issue was as to their respective interests in the land and in the oil produced under an existing lease. After the excerpt announcing the proposition which is relied upon here by appellant the court said:

"The rule laid down does not conflict with Duff v. Keaton [33 Okl. 92], * * * in which it was held that a lease for oil and gas mining purposes was not a conveyance within the purview of Section 5314, Snyder's Comp. Laws. Neither is it in conflict with Frank Oil Co. v. Belleview Oil & Gas Co., 29 Okl. 719, 119 Pac. 260. This case held that an oil lease did not convey an interest in the oil in the ground, but only conveyed what the lessee might find. Nor is it in conflict with Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, in which it was held that an oil lease did not pass anything that could be subject of ejectment or real action. Nothing in those cases intimates that oil is not part of the realty, and that the proceeds from an oil lease, made by life tenant and remainderman after the death of the ancestor, should not be treated in the same way as the proceeds of the land itself."

Brennan v. Hunter, 68 Okl. 112, 172 Pac. 49, raised no question as to procedure in probate. The lands there leased did not belong to a minor, or incompetent. Winona Oil Co. v. Barnes, 83 Okl. 248, 200 Pac. 981, was not dependent upon a construction of the statute here relied on. It turned on the rules promulgated by the Supreme Court June 11, 1914 (adopted after the giving of the lease on Jackson's land), regulating the practice and procedure in probate in such matters. Rule 9, there quoted, reads thus:

"No oil and gas or other mineral lease covering lands belonging to minors or incompetents will be approved except after sale in open court to the highest and best responsible bidder. All petitions for the approval of oil and gas leases shall be filed five days before the same are sold as provided herein; and notice of such sale must be given by posters and by publication where publication is practicable."

It was held that under this rule an order of probate directing that a lease be sold to certain parties at a price named in the order, thereby preventing the same from being sold to the highest bidder and preventing all other parties from bidding at the sale, was beyond the jurisdiction of the court and void. In Carlile v. Oil & Development Co., 83 Okl. 217, 201 Pac. 377, the probate proceedings under consideration were had in February, 1917. The probate order authorized the extension of an existing oil and gas lease on the lands of a minor until he became of age and as long thereafter as oil and gas were produced from the land in paying quantities. It was held that the rules of the Supreme Court for probate procedure were made pursuant to statutory authority, that they had the force and effect of

law, that they had not been complied with and that all persons were presumed to take notice of them, that whether they be regarded merely as rules of procedure or of substantive regulation they must be complied with, and that the extension was therefore void. Cases from other jurisdictions are cited by appellant, defining the rights acquired by a lessee under an oil and gas lease. Some of them hold that the oil and gas in place being a part of the lands, a lease, giving the right to extract and sell those minerals, is a sale of a part of the realty. We examined and considered these cases, and others like them, in Ewert v. Robinson, 289 Fed. 740, as to their bearing upon another issue. What is said in them about the interests of the lessee under an oil and gas lease would be of slight, if any, weight in reaching a correct conclusion on the proposition here presented, even if we were without other guidance; but when they are viewed in the light of other decisions of the Supreme Court of Oklahoma, to be presently noticed, we consider their weight wholly negligible. There can be no doubt of the substantive difference between a sale of mineral lands and a lease of those lands, and of the written instruments which respectively express them and give conclusive evidence of their substantive difference; and we think it reasonable to assume that when the Legislature omitted leases from the statute relied on by appellant it did so because of these differences, and that we cannot read into the statute what was thus omitted. This, happily, is in accord with what we think the Supreme Court of Oklahoma has consistently held whenever the question has been directly presented to it; and if our views were otherwise we would be disposed to feel it our duty to yield to the construction which it has given to the State statutes, under the familiar rule. Barnes v. Keys, as shown supra, is contrary to appellant's contention, and in Duff v. Keaton, 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, the facts as to the proceedings in the Probate court were substantially the same as we have them here. A petition was filed by the guardian on December 24, 1908, to give an oil and gas lease on the minor's lands. The court on that day entered an order granting the prayer of the petition. On the same day the guardian reported that he had made the lease to the Prairie Oil & Gas Company, and on the same day the court approved the making of the lease. An action to cancel the lease was brought in behalf of the minor by his mother as next friend against the guardian and lessee, and it was contended that the statutes in relation to the sale of lands of the minor had not been complied with, and for that reason the lease was void. Addressing itself to the contention the court said:

"The statutes of this state are entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas."

It was held that a lease for oil and gas for mining purposes is not a conveyance or sale of real estate within the purview of the statute, that another statute imposed on the Probate court the duty "to make such orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require," and that under that statute a lease of the minor's

real estate could be lawfully made with the direction and approval of the Probate court. The reasons upon which the conclusion was based are set forth at length. The same ruling was made in Allen v. Midway Oil & Gas Co., 33 Okl. 91, 124 Pac. 296, on substantially the same facts. Again, in Cabin Valley Mining Co. v. Hall, 53 Okl. 760, 155 Pac. 570, an oil and gas lease and its subsequent extension, both made during the minority of a Cherokee allottee on allotted lands, were involved. The suit was to have the order and decree of the county court authorizing an extension of the lease beyond the minority of the minor set aside. A decree in accordance with the prayer of the bill was reversed. The Supreme Court gave attention to the jurisdiction of Probate courts. It was pointed out that the constitution gave them the general jurisdiction of Probate courts and express authority to appoint guardians of minors and transact all business appertaining to the estates of minors. It set out three sections of the statutes, Revised Laws 1910, material to the inquiry:

Section 6547: "Guardians of infants and insane persons are hereby empowered to lease and grant mineral oil and mineral gas, in consideration of a royalty or part or portion of the production thereof, and under the same procedure in the county court, as now provided by law, where such consideration is money."

Section 6569: "The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money, * * * in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

Section 3330: "In all cases the court making the appointment of a guardian has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward."

The court then said:

"Being vested with jurisdiction 'to transact all business appertaining to the estates of minors,' and being given exclusive control of guardians in the management and disposition of the estates of their wards where a guardian has been appointed, it is a reasonable interpretation of these provisions to say that there is included therein that jurisdiction formerly possessed by courts of chancery."

See also Mallen v. Ruth Oil Co. (D. C.) 230 Fed. 496.

The question was again considered in Papoose Oil Co. v. Swindler (Okl. Sup.) 221 Pac. 506, in which it was expressly held that the execution of an oil and gas lease is not a sale of either real estate or personal property within the meaning of the statutes prescribing the procedure for sale of a minor's real estate and personal property. The preceding cases on the point are reviewed. It is pointed out that as early as Duff v. Keaton it was held that the statutes of Oklahoma were entirely lacking as to any specific provision for procedure by the guardian in leasing the lands of his ward for agricultural, grazing or commercial purposes, or for exploring for oil or gas, and that it was held in that case that the only statutory provision applicable to the subject was one requiring that the Probate court make such other orders

and give such directions as are needful for the management, investment and disposition of the estate and effects of the ward as circumstances require, and that the approval by the Probate court of a lease by a guardian was all that was required, that neither competitive bidding, nor notice, nor prior authorization of the court was necessary. It was then said:

"Although this court in Re Indian Territory Illuminating Oil Co., 43 Okl. 316, 142 Pac. 997, held that an oil and gas lease was undoubtedly property, and in Treese v. Shoemaker, 80 Okl. 235, 195 Pac. 766, it is stated that an ·oil and gas lease vests the lessee with 'a present vested interest in the land,' and in Tupeker v. Deaner, 46 Okl. 328, 148 Pac. 853, and in Bentley v. Zelma Oil Co., 76 Okl. 116, 184 Pac. 131, and in Pluto Oil & Gas Co. v. Miller, 219 Pac. 303, * * * an oil and gas lease is a conveyance of interest in land, yet those cases are not in conflict with the holding in the Duff v. Keaton Case that the execution of an oil and gas lease is not a sale of real estate, neither does the lease convey the oil and gas in place so as to be a sale of personal property. Kolachny v. Galbreath, 26 Okl. 722, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487; Priddy v. Thompson (Okl.) 204 Fed. 955, 123 C. C. A. 277."

We are thus persuaded that appellant's principal contention is not sound, and are of opinion that the probate order approving the lease in question was the only order required.

Appellant further contends that Rule 9 adopted by the Secretary pursuant to Section 2 of the Act of May 27, 1908, requires two probate orders, copies of which are to be filed with him before he approves a lease, that is, an order authorizing the guardian to make a lease, and an order confirming that lease. The Secretary may have believed when the rule was adopted that the State statute so required. But whatever his views in that respect may have been, he certainly could not impose, and did not intend to impose by his rules new duties upon the Probate court, duties not required by the laws of the State. The Congressional Act recognized the jurisdiction of the Probate court, that guardians were subject to the direction and control of that court and acted officially pursuant to its lawful orders, and that leases could be thus made only by guardians. But the power of Congress over the subject was such that the Act vested discretion in the Secretary as to whether he would approve them and render them valid after they had been executed under appropriate action by the Probate court. That this was the intention is demonstrated by the second proviso in Section 2 of the Act. There was no intention on the part of Congress, disclosed in the Act, or on the part of the Secretary, disclosed in his rules, even if they had possessed the power to do so (which we do not concede), of requiring the Probate court to take other or different or additional procedure to that imposed upon and required of it by the State constitution and statutes. There may have been encroachments. It would be a surprise if there were none under our dual system. But this Act asserts no purpose, much less a right, to fix through the Secretary the jurisdiction of State courts. On the contrary, the Act, Sections 2 and 6, evinces a clear purpose to empower the Secretary to approve a lease, if in his judg-

ment it be to the best interests of the minor to do so, when and after it has been executed in compliance with the local procedure; and to carry out this purpose he was authorized to establish administrative rules within the limitation above indicated.

The decree is affirmed.