# JANUARY, 1952

RAYMOND MITCHELL ET AL V. LEON MITCHELL ET AL

No. A-3068. Decided June 27, 1951.
Rehearing overruled January 23, 1952.
(244 S. W., 2d Series, 803.)

Bradford Pickett, of Liberty, Charles S. Pipkin, of Beaumont, Morris, Underwood & Oldham, of Houston, Graves, Dougherty & Greenhill, and Ireland Graves and Joe Greenhill, all of Austin, for petitioners.

The Court of Civil Appeals erred in holding and adjudging that royalties received under oil and gas leases were income distributable to the life tenants and were not part of the principal or corpus of the testamentary trust estate to be held in tact for the remaindermen. Thompson v. Thompson, 149 Texas 632, 236 S.W. 2d 779; State v. Hatcher, 115 Texas 332, 281 S. W. 192; Avis v. First National Bank, 141 Texas 489, 174 S.W. 2d 255.

C. B. Cain and R. E. Biggs, both of Liberty, and E. E. Davis, of Newton, for respondents.

Under the wording of the will of testatrix the trustees have no power to invest the income of the estate, but can only distribute it among the heirs. 42 Texas Jur. 713; McMullen v. Simms, 37 S.W. 2d 141; Federal Land Bank of Houston v. Little, 107 S. W. 2d 374.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was brought by Raymond Mitchell, a grandson of Aurelia Mitchell, as a class suit under Rule 42, Texas Rules of Civil Procedure, for construction of a will executed by Aurelia Mitchell, wherein plaintiffs' attorneys intervened and sought to have their rights in the suit determined and protected. The trial court rendered judgment adverse to the claims of plaintiffs and intervenors, and upon appeal the Court of Civil Appeals affirmed the judgment of the trial court. 235 S. W. 2d 744.

Petitioners' application for writ of error presents only one point, and that is that the Court of Civil Appeals erred in holding that royalties received under oil and gas leases were income distributable to the life tenants, and were not part of the principal or corpus of the trust estate to be held intact for the remaindermen.

Petitioners alleged in the trial court that Aurelia Mitchell had by her will created a testamentary trust devising a life estate in an undivided one-half interest in certain land in Liberty County to all of her children, except one, and devising the share that would have otherwise gone to that child to that child's children. They further alleged that said testatrix provided that the trustees should distribute the remainder, after the termination of the life tenancies, to her surviving descendants. It was alleged that the remaindermen consisted of adults, minors, and children yet unborn, and petitioners estimate that the number of the remaindermen will total, upon the termination of the trust, not less than four hundred. The suit was brought to require the trustees to carry out the alleged terms of the will with respect to the testamentary trust, and to hold large sums of money received by said trustees as oil royalties intact, and to require said royalties to be accumulated for the benefit of the trust estate, and to prevent the trustees from distributing said royalties to themselves and other children of the testatrix and to the children of the daughter of the testatrix who had been excluded.

This case involves the construction of the will executed by Aurelia Mitchell, dated July 18, 1932, the essential parts of which are as follows:

"II.

"I direct that all of my property in Liberty County of which

I may die seized or possessed of, both real and personal, including oil and gas leases, be held in trust and I hereby give, devise and bequeath said above property in Liberty County to my sons, Leon Mitchell and Fuhr Mitchell as trustees for the benefit of the beneficiaries to be named hereinafter and on the terms and conditions as hereinafter set out, the income from said trust to be for the benefit of my children, Leon Mitchell, Fuhr Mitchell, Sostan Mitchell, Joe Mitchell, Lezina Prophet, Cornelius Mitchell, Willie Mitchell, Vick Mitchell, Alphonsine Cormier, Agnes King and my grandchildren by my daughter, Theresa Perkins, share and share alike.

"That is, each of my children except Theresa Perkins is to take one share each and the other share, which would otherwise go my daughter, Theresa Perkins, is to go to the children of my daughter, Theresa Perkins, jointly, by name, Matthew Young, Abe Young, Charlie Moore, Johnnie Moore, Johnson Moore, W. T. Moore, and Mary Helen Moore, and at the death of my above named children and above named grandchildren, the income is to go for the benefit of my grandchildren, and great grandchildren; the principal of the trust to be kept intact and held in trust until the death of all of my children and until the death of all of the above named children of my daughter, Theresa Perkins, and until twenty-one (21) years after the death of the last of my children and/or until twenty-one (21) years after the death of the above named children of my daughter Theresa Perkins when said estate and property in Liberty County shall be divided among and shall be vested in the children, grand children, and great grand children of my children named in this will and the children and grand children of the children of my daughter, Theresa Perkins named in this will; the children and grand children and great grand children of each of my children to benefit share and share alike in whatever the share of their parent, grand parent, or great grand parent may be. It is my desire, as far as possible, that this part of my estate be allowed to accumulate for the benefit of my grand children and great grand children, provided, however, that after payment of my debts, the income from said property shall be paid to my children and the children of Theresa Perkins, share and share alike, that is, one share jointly to all of the children of Theresa Perkins, and one share to each of my children except Theresa Perkins. In case of the death of any of my children, the income which would have been paid to them

shall be paid jointly to the children of said deceased child of mine, share and share alike.

"No child, grand child, or great-grand-child of mine shall be able to sell or otherwise anticipate or encumber his or her share.

"It is my will that my daughter Theresa Perkins, take nothing from this trust, but what she would take shall go to her children. I deliberately do this because my daughter, Theresa Perkins, unwisely sold her share of my beloved husband's estate, and on this account I take this action to protect her and her children from similar action. Instead, I give devise and bequeath to my daughter Theresa Perkins, the sum of One Hundred Dollars ($100.00)."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

### "IV.

"It is my will and desire and I hereby direct that the Trustees of this estate pay the share of the children of Theresa Perkins to the said children of Theresa Perkins, or to my daughter Theresa Perkins, for the benefit of her said children, as in their judgment, they deem best, and a receipt from daughter, Theresa Perkins, shall be sufficient to relieve the trustees of any responsibility for the amount so receipted for, and it is my desire that no guardianship proceedings or bond be required of her."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

### "VI.

"I give, devise and bequeath all the rest and the residue of my estate, both real and personal, which I may have any interest in of whatever consisting and wherever located, to have and hold unto them forever, to my children, Leon Mitchell, Fuhr Mitchell, Sostan Mitchell, Joe Mitchell, Lezina Prophet, Agnes King, Cornelius Mitchell, Willie Mitchell, Vick Mitchell, Alphonsine Cormier, and Theresa Perkins, share and share alike. In the event that any or all of them predecease me, then the children of any or all of them shall take the share of the parents, share and share alike."

The subject matter of the trust created by Aurelia Mitchell in her will is her undivided one-half interest in the tract of land

of about 400 acres in Liberty County. This was community property, the homestead of Aurelia Mitchell and her husband, Joseph Mitchell. Prior to the execution of the will, the husband died testate, leaving his half of the property to Aurelia Mitchell for life, with remainder in fee to the children. Since Aurelia's death his half is now owned by them, and they are receiving the royalties thereon.

This controversy involves royalties arising from Aurelia Mitchell's one-half interest in 200 acres of the Liberty County land covered by the oil and gas lease executed by her testamentary trustees to C. S. Gainer, Jr. During her lifetime another 100 acres, off the west side, had been leased to the Sun Oil Company. Still another 100 acres have not been leased. Prior to Aurelia Mitchell's death the 200 acres covered by the Gainer lease had not been leased or drilled, and rights acquired under the "open mine" doctrine are not applicable here. Thompson v. Thompson, 149 Texas 632, 236 S. W. 2d 779; Swayne v. Lone Acre Oil Co., 98 Texas 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; Petrus v. Cage Bros., Tex. Civ. App., 128 S. W. 2d 537, writ refused. Therefore the main question presented here is whether royalty received from an oil and gas lease executed after the death of the testatrix by her testamentary trustee, and after the creation of the life estate, is "income," distributable to the life tenants, or is a part of the corpus of the estate, to be received by the remaindermen.

The will executed by Aurelia Mitchell is dated July 18, 1932. While she was not an educated person, the record indisputably shows that she had her will drawn by an attorney at Houston, Texas. It is quite obvious from the terms of the will that she was deeply concerned about preserving certain rights in favor of certain of her heirs then unborn. One of her daughters had unwisely and improvidently sold her share of the estate derived from her father's estate, and she specifically provided in the will "that all my property in Liberty County of which I may die seized or possessed of, both real and personal, including oil and gas leases, be held in trust," and she gave, devised, and bequeathed said property to her sons Leon Mitchell and Fuhr Mitchell as trustees for the benefit of the beneficiaries and on the terms described in the will, and that "the income from said trust to be for the benefit of my children * * * and my grandchildren by my daughter, Theresa Perkins, share and share alike." The will also provides that "no child, grandchild, or great-grandchild of mine shall be able to sell or otherwise an-

ticipate or encumber his or her share." When this will was written and executed, the public, and particularly the legal profession, was familiar with the decisions of this Court in the following cases: Swayne v. Lone Acre Oil Co., 98 Texas 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; State v. Hatcher, 115 Texas 332, 281 S. W. 192; Theison v. Robison, 117 Texas 489, 8 S. W. 2d 646. See also the decisions of courts in other jurisdictions in the following cases: Parker v. Riley, 250 U. S. 66; 36 Sup. Ct. 405, 63 L.Ed. 847; Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757; Barnes v. Keys, 36 Okla. 6, 127 Pac. 261; Blakley v. Marshall, 174 Pa. 425, 34 Atl. 564. The cases cited above determined the meaning of income, royalties, rents, and proceeds arising from the sale and leasing of lands, and such terms were given a definite meaning by judicial decisions, and the testatrix was bound to know that the law of this State had defined what was income of her estate.

We are not here dealing with a will written in her own handwriting by an uneducated person, unfamiliar with the use of technical legal terms. On the contrary, this will clearly shows that it was drawn for the testatrix by an attorney, who was familiar with the decisions of the courts, and he used the technical terms to carry out the intentions of the testatrix; and it may be assumed that such terms used in the will were used correctly and intentionally. 2 Page on Wills, Lifetime Edition (1941), p. 822, § 921; Long v. Rike, 50 Fed. 2d 124, 81 A. L. R. 521 Cert. den. 284 U. S. 657, 52 Sup. Ct. 35, 76 L.Ed. 557.

1   The testatrix used legal terms in her will that had been defined and sanctioned by judicial decisions to express her intentions as to the disposition of her estate, and it is the duty of the courts to construe such terms in connection with the entire will, to ascertain her intentions. In Corpus Juris, Vol. 69, Wills, p. 80, § 1136, a rule, which is supported by many authorities, is stated as follows:

" * * where the meaning of the language used in the will has been settled by usage and sanctioned by judicial decisions, it is presumed to be used in the sense that the law has given to it, and should be so construed, unless the context of the will shows a clear intention to the contrary." See Avis v. First National Bank of Wichita Falls, 141 Texas 489, 174 S. W. 2d 255.

Aurelia Mitchell knew that at her death the heirs described in her will would own outright, independent of and aside from her will, an undivided interest in the property. Knowing that

the children had already been provided for, she was very careful to protect the interests of the remaindermen. The will particularly provided that "the principal of the trust is to be kept intact and held in trust" until the expiration of the trust period. "The principal of the trust" is the land, and the minerals are part of the land. Texas Company v. Daugherty, 107 Texas 226, 176 S. W. 717; L.R.A. 1917 F. 989; Sheppard v. Stanolind Oil & Gas Co., Tex. Civ. App., 125 S. W. 2d 643, writ refused; State v Hatcher, 115 Texas 332, 281 S. W. 192; Sheffield v. Hogg and The Federal Royalty Co. v. State, 124 Texas 290, 77 S. W. 2d 1021, 80 S. W. 2d 741; Thompson v. Thompson, 149 Texas 632, 236 S. W. 2d 779. The testatrix by her will gave the land to the remaindermen at her death. There is nothing in the will to indicate that she was giving them the land exclusive of the minerals. After the expiration of the trust, it was provided that "said estate and property in Liberty County shall be divided among and be vested in" the remaindermen described in the will. In order to make clear her intention, the will also provided, "It is my desire, as far as possible, that this part of my estate *be allowed to accumulate* for the benefit of my grandchildren and great grandchildren, provided, however, that after the payment of my debts, the *income from said property* shall be paid to my children" and other life tenants. (Emphasis supplied.)

That it was the testatrix's intention to keep intact for future heirs the corpus of her estate, *and that it should be allowed to accumulate,* is clearly reflected in the will. The land and leases make up the corpus of the estate, and the land, excluding the oil, has but a nominal value. It is quite obvious that the land would not accumulate, but the oil royalties would. What was it that the testatrix intended to accumulate? The land produced only nominal revenue, except the revenue from oil wells. It is clear that the only construction that can be given to this will which would carry out her policy of accumulating a fund for the remaindermen is that the royalties were to go into the corpus of the estate. It is shown by the record that for the period from the filing of the suit in March, 1949, to the time of the trial in March, 1950, the pipe line company had impounded $100,000.00 or more, representing royalties accruing to the Aurelia Mitchell trust. The half interest accruing to her husband's devises or assigns for the same period was an equal amount. The royalties from the Mitchell land were averaging $20,000.00 or more per month. In addition, the income from said property was to be paid to her children. Certainly this

record does not support the contention that this is an unnatural will and that those of the heirs who are now living are neglected and are in financial need.

**2** In this State it is held that minerals are a part of the land, and that royalties received by trustees authorized to sell are the consideration for the sale of the mineral estate. The royalties represent the purchase price received from the sale of the trust principal or corpus. State v. Hatcher, 115 Texas 332, 281 S. W. 192; Sheffield v. Hogg and The Federal Royalty Co. v. State, 124 Texas 290, 77 S. W. 2d 1021, 80 S. W. 2d 741; Theisen v. Robison, 117 Texas 489, 8 S. W. 2d 646; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290, 29 A. L. R. 566; Sheppard v. Stanolind Oil & Gas Co., Tex. Civ. App., 125 S. W. 2d 643, writ refused; see also Chesson v. Commissioner, 57 Fed. 2d 141; Commissioner v. Wilson, 76 Fed. 2d 766; Davis v. Atlantic Oil Producing Co., 87 Fed. 2d 75.

**3** The case of Avis v. First National Bank of Wichita Falls, 141 Texas 489, 174 S. W. 2d 255, 257, involved the construction of a will, in which the testator employed the term "income" as distinguished from the term "corpus." He directed that his debts be paid, and "after this is done I direct that my trustee shall keep the corpus of my estate intact, if possible, and so far as practical until the death of my wife * * *; and shall pay over to said Minnie Ola Avis the entire net income from my estate during her lifetime." The main question involved in that case was whether the trustee was authorized to execute an oil and gas lease. This Court held that the power to sell the land included the power to sell the oil and gas in place by means of a lease. It was contended that to lease the land for the benefit of the life tenant would involve waste and destroy the corpus of the estate. In reply thereto it was said:

"An oil and gas lease executed by the trustee under the terms of this will would not be one executed in the interest of the life tenant. The substantive rights of the life tenant and the remaindermen would still be preserved. The royalty would go to the remaindermen, and the interest on the royalty would go to the life tenant. Swayne v. Lone Acre Oil Co., 98 Texas 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; State v. Hatcher, 115 Texas 332, 281 S. W. 2d 192; Parker v. Riley, 250 U. S. 66, 70, 71, 39 S. Ct. 405, 63 L. Ed. 847; Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757; Barnes v. Keys, 36 Okla. 6, 127 P. 261, 45 L. R. A., N. S., 178; Ann. Cas. 1915A, 515; Blakley v. Marshall, 174 Pa. 425, 34 A. 564." See also Davis v. Bond, 138 Texas

206, 158 S. W. 2d 297; Davis v. Atlantic Oil Producing Co., 87 Fed. 2d 75; Texas Company v. Marlin, 109 Fed. 2d 305.

When the language of the will involved here is considered, we think it is clear that it was intended that only the income derived from the estate as well as from the royalties would be distributed to the life tenants, and that by the term "royalty" is meant a part of the corpus of the estate to be held and received by the remaindermen.

The judgments of the trial court and Court of Civil Appeals are reversed, and this cause is remanded to the trial court for further proceedings.

Opinion delivered June 27, 1951.

Associate Justice Smith not sitting.

Rehearing overruled January 23, 1952.