**F. L. KUYKENDALL, Appellant,**

v.

**R. E. BIGGS and E. E. Davis, Appellees.**

No. 6202.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 31, 1959.

Rehearing Denied Jan. 20, 1960.

F. L. Kuykendall, Trueman E. O'Quinn, Austin, for appellant.

E. E. Davis, Dayton, E. A. Lindsey, Newton, T. J. Hightower, Liberty, for appellees.

McNEILL, Justice.

This is a suit brought by F. L. Kuykendall, a lawyer of Austin, Texas, appellant

here, against R. E. Biggs and E. E. Davis, lawyers of Liberty County, Texas, appellees here, for reasonable attorney's fees for representing the said Biggs and Davis in the Court of Civil Appeals and in the Supreme Court of· Texas in that certain suit for attorneys' fees, American National Bank of Beaumont v. Biggs, 274 S.W.2d 209 (writ refused n. r. e.). In the reported case the district court of Liberty County had allowed attorneys' fees to R. E. Biggs, E. E. Davis, and Richard Critz, F. L. Kuykendall, E. L. Bauknight and Pierce Stevenson, in the sum of $47,311.35. The petition in the case at bar alleged both an express agreement on the part of Biggs and Davis to pay plaintiff a reasonable attorney's fee and in the alternative alleged that his services were rendered in connection with the defense of the case with their knowledge and consent and that they received material benefit therefrom, and therefore under the rule of quantum meruit he should recover reasonable fees for his services which he alleged to be $10,000, and after crediting certain payments to his former law partners left a net amount of $8,650 which he asserted Biggs and Davis owed for his services. He alleged, among other things, that he had done a great deal of studying and briefing of the difficult questions involved, writing the brief in the Court of Civil Appeals for the attorneys and filing answers to motions for rehearing and answer to applications for writs of error, along with certain other work. Upon trial to the court judgment was rendered denying Mr. Kuykendall recovery and he has appealed. He requested findings of fact and conclusions of law which were filed and which are quoted from hereinafter.

In order to understand the issue involved it should be mentioned that Leon and Vick Mitchell, trustees of the Mitchell Estate of Liberty County, originally employed R. E. Biggs to represent them in the will construction of Mitchell v. Mitchell, Tex. Civ.App., 235 S.W.2d 744; 151 Tex. 1, 244 S.W.2d 803. Mr. Biggs in turn employed E. E. Davis to assist him. These two lawyers represented the Mitchell Trust in the trial court and in the Court of Civil Appeals in that case. After the Supreme Court granted a writ of error it was decided that Mr. Biggs should employ a law firm at Austin to help in the Supreme Court and he employed the Critz-Kuykendall firm with the understanding that they would be paid the sum of $5,000 for their services if successful in that court. While subsequent events somewhat altered the express agreement made between them, yet there was no dispute but that the Austin law firm had an interest of $5,000 in attorneys' fees upheld by the district court in the fee case, American National Bank v. Biggs suit first mentioned in this opinion (Tex.Civ.App., 274 S.W.2d 209).

The immediate factual basis for the present suit is now set forth:

After the district court of Liberty County entered judgment on June 5, 1952 in Mitchell v. Mitchell, in accordance with the opinion of the Supreme Court reported 151 Tex. 1, 244 S.W.2d 803, the attorneys involved, through R. E. Biggs and Judge Richard Critz, prepared a claim for attorneys' fees against the Estate of Aurelia Mitchell for legal services rendered by R. E. Biggs, E. E. Davis, and the firm of Critz, Kuykendall, Bauknight & Stevenson for representing the trustees of the Aurelia Mitchell Estate in the construction of her will. Mr. Biggs presented this claim to the district court and submitted evidence as to the legal services rendered and their value, and the district court granted an order dated July 14, 1952, allowing said attorneys ten percent of the money then held in escrow by the Gulf Pipeline Company, which ten percent amounted to $47,311.35. While this claim for legal services was approved by Leon and Vick Mitchell, two of the trustees of said estate, it was not approved by the American National Bank which had been added as a trustee in the June 5th judgment and the hearing was without notice

to the beneficiaries in the Trust. However, sometime in the first part of October, 1952, the American National Bank of Beaumont, trustee, issued a check for the attorneys' fees involved, payable to Messrs. Biggs, Davis and the Austin law firm, and the check was transmitted by its letter to the Austin law firm who received it about October 16, 1952. Judge Critz of the firm hesitated to endorse the check and discussed the question of possible liability thereunder since there was no notice given the beneficiaries of the trust nor an opportunity to be represented at the hearing of July 14th. It was finally decided by him and his firm that the check would be endorsed and returned to the bank with instruction not to deliver said check to anyone until notice and a hearing to all parties at interest in the Trust shall have been concluded. The check was so endorsed and returned to the bank. The bank then on November 1, 1952, as a co-trustee in said Aurelia Mitchell Trust, brought suit against the lawyers involved to have said order of July 14, 1952 set aside and to cancel said claim. The bank's co-trustees, Leon Mitchell and Vick Mitchell, were made parties defendant as well as were the beneficiaries of the Trust. For a more detailed statement see Tex.Civ.App., 274 S.W.2d 209. To this suit R. E. Biggs filed answer for himself; E. E. Davis filed answer and adopted the answer of Biggs; and the members of the firm of Critz, Kuykendall, etc., filed answer and adopted applicable parts of the Biggs answer. The record before us shows that there were many beneficiaries of said Trust scattered over a large territory and that appellee Biggs spent time and effort in locating them for service of citation in the suit so that an early hearing could be obtained. Considerable correspondence ensued between Biggs and Mr. Kuykendall and his law firm. October 30, 1952 Judge Critz for his firm wrote Biggs stating: "We will be glad to be of assistanec to you in this matter." And on November 21, 1952 Judge Critz, for his firm, wrote Mr. Biggs as follows:

"Re: No. 14,980

"The American National Bank of Beaumont vs. R. E. Biggs, et al

"Dear Judge Biggs:

"We received your letter several days ago and have not answered it sooner on account of the fact that we have had to confer with the different members of our firm as to what to do.

"We are this day forwarding to the Clerk a waiver of citation on each of the members of our firm.

"We have decided that it is satisfactory with us for you to represent us in this proceeding with the proviso that whatever judgment is entered will fix our fee separately so that we can be paid with a separate check. We feel that for us to have to sign a check for the total amount to all the attorneys might cause us to be responsible for any trouble that might arise after this proceeding is closed. Also, you will kindly let us know the date set for this hearing so that one of our members may be present. We have no intention of causing any delay in this matter except that which is necessary in the premises. We are enclosing copy of the waiver we have mailed to the District Clerk.

"Kindly let us hear from you as to when this action will be set for trial.

"Yours very truly,
"Critz, Kuykendall, Bauknight
& Stevenson
RC:oe "By Richard Critz

"P.S. Kindly send us copy of the answer you file in the above cause."

In accordance with this letter Mr. Biggs and Mr. Davis represented the Critz-Kuykendall firm as well as themselves at this trial held March 27, 1953. They presented proof of legal work rendered by the attorneys for the trustees in the Mitchell v. Mitchell suit along with testimony as to its value, and Mr. Biggs made an argument to the court in behalf of the parties at the conclusion of the evidence. Mr. Kuykendall was present at the trial but took no

active part in it except to make a short argument affirming Biggs' contentions. At the conclusion of this hearing the court reaffirmed its order of July 14, 1952, allowing the fee mentioned. The next day Judge Critz wrote Mr. Biggs as follows:

"March 28, 1953

"Judge R. E. Biggs
"Liberty, Texas

"Dear Mr. Biggs:

"We are enclosing copy of judgment to be entered in the Mitchell case with such interlineations and corrections as we take the liberty to suggest. After you have gone over our suggestions we leave it with you to prepare the final instrument. We are rather inclined to the view that we will stand on the original order or judgment. We think this can be sustained on the theory that this estate is now being administered in the District Court of Liberty County, and that the order formerly entered is not, strictly speaking, a judgment entered in a cause on trial but is merely an administrative order entered by the court in the administration of the Aurelia Mitchell estate. You will notice that we have cut out mention of interest.

"We also suggest that the appointment of Mr. Morris to represent certain minor parties ought to be shown in the judgment, and the judgment should further show that he appeared and filed answer for the parties he was appointed by the Court to represent.

"With kindest personal regards, we remain
        "Yours very truly,
        "Critz, Kuykendall, Bauknight
            & Stevenson
        "By Richard Critz"

The firm of Orgain, Bell & Tucker of Beaumont, who represented the American National Bank as trustee, prepared the final draft of the judgment after suggestions of the various lawyers, which was approved by Mr. Biggs and which was signed by the judge.

The American National Bank, as trustee, along with a group of beneficiaries, appealed from the judgment of the district court of March 28, 1953. Biggs received a letter from Kuykendall, dated June 15, 1953, in which he stated: "We certainly do want to help on the appeal. After you have prepared a draft of your brief, we would be glad to go over it with you and make such suggestions we think will be useful." Biggs and Davis accordingly prepared a tentative brief for appellees and Biggs mailed it to Mr. Kuykendall September 9th and on September 12, 1953 went to Austin where he conferred with Mr. Kuykendall about the questions of law involved. It was suggested by Mr. Kuykendall that there were certain errors, both of form and substance in the tentative brief, and that he prepare the final brief for the parties and send it to Mr. Biggs for his approval and if approved Mr. Biggs would have it filed. Mr. Kuykendall prepared a very satisfactory brief, using some of the authorities that were cited in Biggs' tentative brief, and sent it to Mr. Biggs with the suggestion, "If you think some changes should be made please telephone me and we will agree on a time and place where we could meet, maybe next Monday or Tuesday, and see what changes should be made.

If you have any criticism of the brief and you would prefer to write me, please feel free to do so. I believe that the question of merger as raised in our brief and the authorities cited from other jurisdictions, make our brief a little stronger than the one you sent to us." Mr. Biggs approved this brief and had it filed. On the day set for oral argument of the case in this court Messrs. Biggs, Davis and Kuykendall were present in the court and Mr. Kuykendall made an excellent argument. After the Court of Civil Appeals had written an opinion in the cause, Mr. Kuykendall wrote Mr. Biggs on May 10, 1954 that he was afraid the Supreme Court would grant a writ in the case unless "we can get the court to add to its opinion on motion for rehearing." He stated that "since the suit

filed by the Bank was one contesting the allowance of the claim, it was not necessary that the heirs of the decedents be parties." Then he stated:

"I think you should point out to the Court, if the appellants have not already done so in their briefs, that the Bank has good grounds for being uncertain whether it would be protected against claims of remaindermen, if our fees are paid. Because of that uncertainty the Supreme Court would probably grant an application for writ of error.

"Your brief points up the possible and probably conflicts or at least uncertainties. If you file it the appellants will reply to it. However, we think the Court should know that the language in the latter part of the opinion has created uncertainty in our minds. Do as you think best about filing your brief. If you file it, I'd suggest that you add our names as attorneys.

"Our reply to their motions for rehearing briefly replies to all points raised by their amended motions for rehearing.
"Yours very truly,
"Kirk"

After receiving Mr. Kuykendall's letter of May 10th Mr. Biggs wrote him in reply as follows:

"June 11, 1954
"Mr. F. L. Kuykendall
"Attorney at Law
"Perry-Brooks Building
"Austin, Texas

"Dear Kirk:

"I went to Beaumont Wednesday and visited Judge Murry and Judge Walker, who, as you know, are on the Court of Civil Appeals. I have reason to believe from our limited conversation that the court will likely grant the bank's motion for a rehearing and will remand our case unless we can convince them that all necessary parties were before the court at the time of the entery of the judgment now on appeal.

"I got the impression that Judge Walker has forgotten the original breif that you prepared, particularly with reference to the authorities concerning the merger of the Judgment dated July 14, 1952. I will endeavor to extend the brief that I handed you by more thoroughly briefing the question of notice. I still think that the judgement entered July 14, 1952 as well as the judgment on appeal now falls within the exception of the general rule and that the heirs were not necessary parties to the validity of the judgment. If we can compile the reasons supporting all of our statutes with referecnt to notice, I think we can furnish the court with ample authority to support our position. For instance Article 1982 makes it necessary for the heirs of the estate to be made parties where the title to real estate is involved. Of course, the same is true where an estate is to be partitioned. With these two exceptions, I do not find a requirement in the law anywhere that heirs are necessary parties in the validity of a judgment that approves a claim or a debt against the estate.

"The primary question, I think, that worries the court now is that we did not secure service on our cross-action. Yet, all of the trustees and a number of the heirs, as you know, were present and participated in the trial. Now it seems to me that any person or parties who participated in the trial would not be in a position to say at this late date the judgment is invalid because some of the heirs were not served with our cross-action and answer. It also occurs to me that all of said heirs having been served with the bank's petition were given sufficient notice of the controversy involved, having defaulted, are not in a position to complain. Of course, I will mail you a copy of the brief that I shall prepare and would like to hear from you at your earliest convenience concerning the matters mentioned in this letter.
"Your friend,
"R. E. Biggs"

And then on June 15 following he wrote Mr. Kuykendall as follows:

"Mr. F. L. Kuykendall
"Attorney at Law
"Perry-Brooks Building
"Austin, Texas

"Dear Kirk:

"I am enclosing a brief in answer to the bank's second motion for rehearing which I should like to file at the earliest date possible. If you have any suggestions to make concerning the brief, please feel free to do so. If you wish, please sign the brief and return it to me.
"I will send you a copy of the brief just as soon as sufficient copies are made.
"With best personal regards, I am
"Sincerely yours,
"R. E. Biggs"

It was subsequently agreed, however, by all parties not to file Mr. Biggs' brief mentioned in these letters.

On December 16, 1954 Mr. Biggs wrote Mr. Kuykendall stating that he presumed that Mr. Kuykendall had received a copy of appellants' second motion for rehearing in the case and after discussing the matter concluded by saying, "Please advise me if you intend to answer these second motions for rehearing or prefer that I prepare the answers."

Findings of fact of Trial Court:

The trial court has filed extensive findings of fact in this cause but in the interest of brevity we will not quote them all. However, we quote the following findings:

"25. That there was no contract, expressed or implied, entered into by and between the plaintiff, F. L. Kuykendall, or either of the defendants, R. E. Biggs, or E. E. Davis, for plaintiff, F. L. Kuykendall, to ·perform the services which he, F. L. Kuykendall, did perform when the case of the American National Bank v. R. E. Biggs, et al, was in the Court of Civil Appeals in Beaumont, Texas.

"26. That any fee for services rendered by the defendants, R. E. Biggs and E. E. Davis and the firm of Critz, Kuykendall, Bauknight & Stevenson in the case of Mitchell v. Mitchell was contingent upon the successful prosecution of the case of American National Bank v. R. E. Biggs, et al, by R. E. Biggs, E. E. Davis and the firm of Critz, Kuykendall, Bauknight & Stevenson; that each of said defendants, R. E. Biggs, E. E. Davis and the firm of Critz, Kuykendall, Bauknight & Stevenson, being defendants and mutually interested in collecting their fee, owed each other a moral and legal duty to do everything necessary and proper to successfully prosecute the case of American National Bank v. R. E. Biggs, et al; that the services rendered by plaintiff, F. L. Kuykendall, in the case of American National Bank v. R. E. Biggs, et al, was as a member of the firm of Critz, Kuykendall, Bauknight & Stevenson; he did nothing extra for R. E. Biggs and E. E. Davis, and ·he was paid by the firm for such services so rendered in the case of American National Bank v. R. E. Biggs, et al.

"27. That the defendants, R. E. Biggs and E. E. Davis, did not have any cause to believe, or any notice whatsoever, on the part of plaintiff, F. L. Kuykendall, that he was acting for himself individually and not as a member of the firm of Critz, Kuykendall, Bauknight & Stevenson; that it is impossible to determine in what manner and to what extent the services rendered by plaintiff, F. L. Kuykendall, was individual or as a member of the firm of Critz, Kuykendall, Bauknight & Stevenson, or for R. E. Biggs and E. E. Davis.

"28. That the defendants, R. E. Biggs and E. E. Davis, having represented themselves and the firm of Critz, Kuykendall, Bauknight & Stevenson, in the case of the American ` National Bank ` v. ` R. E. Biggs, et al, through the entry of the judgment in the trial court without any active co-operation from the plaintiff or any member of the firm of Critz, Kuykendall, Bauknight & Stevenson, and having been advised by the

Honorable Richard Critz of firm of Critz, Kuykendall, Bauknight & Stevenson, that they, the said firm, desired to render whatever services they might to the defendants, R. E. Biggs and E. E. Davis, in the successful prosecution of their said claim against the Aurelia Mitchell Trust Estate, from all the circumstances, had reason to believe that the services rendered by plaintiff was as a representative or member of the firm and merely reciprocating for the services rendered by R. E. Biggs and E. E. Davis in procuring the said judgment.

"29. That the services rendered by the plaintiff, F. L. Kuykendall, for all the defendants in the case of the American National Bank v. R. E. Biggs, et al, was performed as a member of said firm of Critz, Kuykendall, Bauknight & Stevenson.

"32–A No special benefit, that is, no benefit different or greater than that resulting to each and all of the defendant attorneys, accrued to Biggs and Davis and they had no knowledge that attorney Kuykendall's efforts were being performed and rendered for them or their individual benefit, but on the other hand, Biggs and Davis had knowledge that the efforts on behalf of attorney Kuykendall were rendered on behalf of and so as to benefit himself individually as a party defendant and also the law firm of Critz, Kuykendall, Bauknight & Stevenson, another defendant, of which he was a partner and employed and paid by other firm partners to represent the firm and all individual partners therein.

"33. That all of the attorneys in the American National Bank v. R. E. Biggs, et al, case, that is, R. E. Biggs and E. E. Davis and the firm of Critz, Kuykendall, Bauknight & Stevenson, were employed on a contingent fee basis. They were all to be paid out of a common fund and although the respective interests might vary as to amount, they each and all had a common interest in a common fund with common hopes and expectations of success together with common responsibilities."

All of the findings of the trial court are supported by the evidence and we are bound thereby. However, in his 26th finding the court, in our opinion, inserts the conclusion of law that "each of said defendants * * * owed each other a moral and legal duty to do everything necessary and proper to successfully prosecute the case * *" We are not to be understood as approving this to the extent that each defendant owed a "legal" duty to do so; on that we express no opinion. But we think that each owed the others the moral duty to assist in such understanding.

Since the findings eliminate the cause of action upon an express contract or agreement, the question whether right of recovery upon quantum meruit exists alone confronts us. This record indicates that Messrs. Biggs and Davis on the one hand and Critz and Kuykendall on the other fully cooperated with each other, compared views and placed their efforts together as is so often done by lawyers seeking a similar conclusion. Biggs had spent effort for about four years on the Mitchell case and had much time and money invested in it. He was without question the leading spirit in the trial court in the suit over the fee: through his efforts service was more quickly had on parties to the suit to expedite the hearing, and he led the way in filing answer which Mr. Davis adopted and which the others adopted so far as applicable. When the time came to try the case he had the proof available for the court of the time and work spent by the attorneys and the value thereof and presented oral argument to the court thereon at the hearing, which was successfully concluded. He also saw that the judgment was properly signed and entered. When the time came for filing the briefs for appellees' lawyers in that case, the record shows he and Mr. Davis had collaborated on a tentative brief of some 14 pages, which Mr. Biggs took to Austin and upon which he and Mr. Kuykendall conferred. This was evidently done following the suggestion of Mr. Kuykendall in his letter to Biggs of June 15, 1953, stat-

ing that "we certainly do want to help on the appeal." It seems to this court, as it evidently did to the trial court, that the participants, especially Biggs and Kuykendall, carried all the way through the appeal of the case the friendly cooperation in properly protecting their mutual interests in the litigation that should exist between lawyers. If two or more such lawyers are suing in a common suit to recover a fee in which their proportionate interests are definitely agreed upon it will be presumed, in the absence of an agreement to the contrary, that they are giving their efforts and time thereon in a mutually reciprocal way to obtain the interests they sue for. It is true the record shows that Mr. Kuykendall is one of the ablest of Austin lawyers, both in trial and appellate court experience, much more experienced than Messrs. Biggs or Davis, but this cannot alter the fact that all three gave considerable time toward obtaining a favorable result. It is clear, as held in Brand v. Denson, Tex.Civ.App., 81 S.W.2d 111, and relied upon by appellant, that where an attorney has preserved or protected a common fund worked for others as well as himself, the others so benefited should bear their proportion of the expenses, including a reasonable attorney's fee. But the rule does not apply where all parties owning the mutual fund contribute their time and effort in the joint services as is seen in the present case. Where services are performed by all the parties for the mutual benefit of all parties concerned, the law will not imply a promise to reimburse. 98 C.J.S. Work and Labor § 6, p. 722. The right of quantum meruit recovery rests upon implied contract. Wyche v. Perrin, Tex. Civ.App., 228 S.W.2d 330. And it was said in Stephens v. Mills County, Tex.Civ. App., 113 S.W.2d 944, at page 947:

"The law is settled that an implied contract arises only where in the circumstances disclosed which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. 10 Tex.Jur. 18, 23."

We are convinced, in view of the ordinary practice among lawyers of this state, the facts and circumstances in this record fail to show it was the intent of the parties involved that appellant's services rendered in the cause for the mutual benefit of the parties was to have been compensated for in whole or in part by appellees.

The judgment of the trial court is affirmed.