

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

August 30, 1972

Honorable Hugh C. Yantis, Jr.
Executive Director
Texas Water Quality Board
Lowich Building
Austin, Texas   78701

Opinion No. M- 1202

Re:   Whether bonds of Northwest
Houston Water Supply Cor-
poration issued pursuant
to contract with the City
of Houston under Article
1109j, V.C.S., as obliga-
tions of the City under
Sections 21.601-21.617,
Texas Water Code are eligi-
ble for purchase by the
state, and related questions?

Dear Mr. Yantis:

Your recent request for an opinion states that in 1965 the
City of Houston became concerned about the lack of water and
sewer facilities in that area adjacent to the City known as
Acres Homes. Supported by Resolution of the City Council, three
Houston residents were requested to form a non-profit water
supply corporation, under the provisions of Article 1434a,
Vernon's Civil Statutes,* to acquire or construct the necessary
facilities to service this area.

It apparently was contemplated that the facilities were
to be acquired with corporate bond proceeds flowing from a
contract with the City of Houston, under the provisions of
Article 1109j, whereby the City agreed to purchase the facil-
ities from the non-profit corporation and in consideration
therefor was to pay to the corporation periodic amounts neces-
sary to pay off the corporate bond debt. The City would annex
that area known as Acres Homes in phases as the various sections
were provided water and sewer service. The corporation was
organized as the Northwest Houston Water Supply Corporation with
all its stock being held in trust by the Mayor of Houston for the
benefit of the residents of that area.

It appears that the parties are now in phase three of

---

*All references to Articles are to Vernon's Civil Statutes,
unless otherwise stated.

-5887-

the four phase plan for annexation of the Acres Homes area.
Your inquiries with reference to the character of the
"corporate obligations" of the Northwest Houston Water
Supply Corporation have been paraphrased for purposes of
clarity:

> (1)  Are bonds of Northwest Houston Water
> Supply Corporation issued pursuant to and
> supported by a contract with the City of
> Houston under the provisions of Article
> 1109j, considered "other obligations" of
> the City of Houston within the provisions
> of Sections 21.601 through 21.612 of the
> Texas Water Code and as such eligible for
> purchase by the State?
>
> (2)  If the bonds of Northwest Houston Water
> Supply Corporation are not considered "other
> obligations" of the City of Houston as that
> term is used in Section 21.602 (6)(7) of
> the Texas Water Code, would they become so
> eligible if they were to bear a certificate
> signed by the Mayor of the City of Houston
> to the effect that the City is unconditionally
> obligated to pay the bonds from its ad valorem
> tax revenues?
>
> (3)  Could the provisions of Subchapter I,
> Chapter 21, Subtitle C of the Texas Water Code
> (Sections 21.601 - 21.612) be amended so as to
> include bonds of this non-profit corporation
> within the term "other obligations of a political
> subdivision" where the bonds offered for sale to
> the State are unconditionally secured by a con-
> tract with a political subdivision under the
> provisions of Article 1109j?

Before answering your first question, we must first examine
the "legal character" of the parties to that contract herein-
above referred to.

In the case of Tarrant County Water Supply Corporation
v. Hurst-Euless-Bedford Independent School District, 391
S.W.2d 162 (Tex.Civ.App. 1965, error ref. n.r.e. 1965) the
court specifically held that public utility corporations
of the kind here under consideration are

". . . not municipal or governmental
agencies . . . Neither would a corporation
formed under the provisions of Article
1434a be a political subdivision." (at
p. 163).

On February 15, 1972, this office in Opinion M-1070
specifically held that the Northwest Houston Water Supply
Corporation was not a "political subdivision" as that
term is used in Sections 21.601 through 21.612 of the
Texas Water Code.

There is no question that we are here dealing with
two separate legal entities which do not look to each other
for their identity or existence. The Northwest Houston
Water Supply Corporation, incorporated under the provisions
of Article 1434a, is not a part of the City of Houston nor
could it be considered as one of its agencies or departments.
The relationship which the parties bear to one another would
be determined by contract, but we do not believe any such
contract could operate to change the "legal nature" of the
parties as they existed at the time the contract was made.
This same principle would apply to any security which the
city or the corporation might contemplate issuing. No
contract between the parties could convert a bond, note or
warrant of the City of Houston into an obligation of the
corporations, nor vice-versa.

It is contended by the attorneys for one of the inter-
ested parties that the bonds issued by the Northwest Houston
Water Supply Corporation are eligible for purchase by the
Texas Water Development Board under Section 21.601, et seq.,
Texas Water Code, because they are "obligations" of the City
of Houston within the meaning of Section 21.602(7). In
support of this proposition, the following additional facts
and considerations are presented:

"2. Northwest Houston is a non-profit
corporation organized under Article 1434a,
Vernon's Texas Civil Statutes, at the request
of the City, and all of the stock is held in
trust by the Mayor of Houston for the benefit
of the residents of the City and the residents
of the Acres Homes area adjacent to the City.

"3. The corporate charter prohibits dividends

and requires that all profits of the corporation be paid out to the cities, towns, and other entities with whom the corporation does business. No business has ever been conducted except with the City of Houston.

"4. The Mayor and City Council of Houston appoint the corporation's directors, and all of the corporation's actions are submitted to the City for approval.

"5. The basic contract between the City and Northwest Houston Water Supply Corporation, and all supplemental contracts, require the following:

(a) Approval by the Mayor and City Council of the City of Houston of the plan of financing proposed projects;

(b) Approval by the City's Director of Public Works of plans, specifications, and contract documents;

(c) Approval by the Houston City Council of construction bids and proposed awards of construction contracts; and

(d) Approval by the Houston City Council of the resolution authorizing issuance of the bonds.

"6. The contracts obligate the City of Houston to pay directly to the bond paying agent sums suffi- cient to pay the principal of and interest on the bonds, just as the City does for its own bonds.

"7. The contracts require those payments to be made from a continuing direct annual ad valorem tax on all taxable property within the City, as is the case with general obligation bonds issued by the City.

"8. The City Ordinance authorizing the contracts levies the ad valorem tax required to make such prin- cipal and interest payments.

"9. The City Ordinance approving the bond reso-

lution, the interest rates, and the sale of the
bonds and authorizing their issuance reaffirms the
unconditional obligation of the City to make the
payment of principal of and interest on the bonds.

"10.  The contracts provide that

'The City's obligation to levy such
annual tax and to make the payments on the
purchase price as herein provided shall
inure to the benefit of the owners and holders
of the aforesaid bonds of the company who
shall have, in addition to all other remedies
at law and in equity, the right to enforce
specific performance of the City's obligation
to levy such annual payments.'

"11.  The contracts, the bond resolutions, and
the bonds themselves provide for a pledge of the City's
payments to the paying agent bank as security for the
bonds.  The only security behind the bonds and the
sole source of payment of the bonds is ad valorem
tax revenues of the City.  In addition, the bond reso-
lutions and the contracts specifically refer to rights
of the bond holders as against the City in the event
of default.  It is clear that 'all of the instruments
were prepared and entered into in the accomplishment
of a single purpose' and must be construed together
as one instrument.  Guadalupe-Blanco River Authority
v. City of San Antonio, 200 S.W.2d 989 (Tex.Sup.1947).
Therefore, the City's obligation to pay the bonds
from tax revenues is a part of the contract with the
bond holders, and the bonds themselves are obligations
of the City of Houston.

"12.  There is no unconstitutional grant of
public money or thing of value, lending of credit,
or grant of special privileges.  The City is con-
tracting for services it could perform, and indeed
is obligated to perform, for itself. . . .

"13.  The levy of ad valorem taxes by the City
is not a violation of Article 701, Vernon's Texas
Civil Statutes.  These are not the bonds of the
City even though they are obligations of the City.
There is no constitutional or statutory requirement
for an election to approve the contract or the bonds.

"14. The interest on the bonds is exempt from
Federal income taxation under rulings of the Internal
Revenue Service.

"15. The bonds are eligible for purchase and
unlimited holding by national banks under rulings
of the Comptroller of the Currency that the bonds
are general obligations of a state or political
subdivision."

Article 1109j is express authority for cities to contract
with non-profit corporations for the purpose of acquiring,
for the benefit of the cities, water distribution and sani-
tary sewer systems. There is nothing in this act which would
indicate that bonds issued pursuant to any such contract
would be or should be considered as "obligations" of the
cities contracting. The Article in referring to the respon-
sibility of cities under any such contract states:

"Such contract may provide for purchase by
the city. . . of such system. . . by periodic
payments to such. . . corporation by the city. . .
in amounts which. . . will be sufficient to pay
the principal of and interest on the bonds of the
. . . corporation as they become due." (Emphasis
added).

It is clear that the act considers these bonds "corporate"
bonds and not "municipal" bonds.

We recognize that it would be to the City of Houston's
advantage if the bonds of the Water Supply Corporation were
eligible for purchase by the Texas Water Development Board
with funds made available through the water "enhancement
account" as authorized by Article III, Section 49-d-1 of
the Texas Constitution. Sections 21.601 through 21.612
of the Texas Water Code speaks to "bonds or other obligations
of a political subdivision" as being eligible for purchase
with water quality enhancement funds. Because the water
supply corporation is not a political subdivision, their bonds
as such are not eligible. Atty. Genl. Opinion M-1070, supra.

We have previously concluded that the bonds issued pur-
suant to a contract authorized by Article 1109j are the bonds
of the corporation and not the City. Where the statute uses
the term "other obligations of a political subdivision" it
must be construed to have reference to securities of the same

nature or character as bonds (i.e. warrants, certificates of obligation, etc.) and may not be interpreted broadly to include any or all types of obligations of a political sub-division.[1]  The fact that the City of Houston has direct "obligations" under a contract with the Northwest Water Supply Corporation pursuant to Article 1109j, is thus not sufficient to make the corporate bonds, issued pursuant to the contract, eligible as "other obligations" of the City of Houston as that term is used in Section 21.602 (6)(7).

In your second question you have suggested that if the bonds of the water supply corporation bear a certificate signed by the mayor of the City of Houston, citing the City's unconditional obligation to pay the bonds, that they then might be considered "other obligations" of the city for water enhancement loan purposes.

We find nothing in our statutes that would authorize the City of Houston to act as an accommodation indorser or surety on the bonds of a separate entity.  The authority of the City is one in contract pursuant to Article 1109j, and its responsibilities are contained therein and confined thereto.  It is generally recognized that without legislative authority, a city may not legally become a guarantor, in-dorser, or surety for the payment of bonds or other obligations of another corporate entity.  McQuillin, Municipal Corporations, Vol. 15, Section 39.10.  As stated earlier in this opinion, we are here concerned with a non-municipal bond, and should the city wish to have outstanding its general obligation bonds to cover the proposed projects, it would be necessary to comply with the requirements of Article 701, which reads, in part,

> "The bonds of . . . an incorporated City. . . shall never be issued. . . unless a proposition for the issuance of such bonds shall have been first submitted to the qualified voters. . . ."

---

[1]Noscitur A. Sociis (It is known from its associates, 1 Vent. 225.)  The doctrine means that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general.  53 Tex.Jur.2d 221, Statutes, Section 154; Farmers' & Mechanics' Nat. Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120(1911); Calvert v. Austin Laundry & Dry Cleaning Co., 365 S.W.2d 232 (Tex.Civ.App.1963 error ref., n.r.e.); Dunham v. State,140 Fla. 754, 192 So.324,(1939).

One cannot accomplish indirectly that which it has no authority to do in the first instance.

As a matter of information, the proposed contract between the parties covering Phase 3 of the project, which you forwarded to this office as part of your background information, calls for a water supply and distribution system as well as certain sewage facilities, <u>excluding</u> specifically a sewage treatment plant, to be constructed with the bond proceeds.

Even if the bonds were considered bonds of the City of Houston they would still not be eligible for purchase by the Texas Water Development Board, for Section 21.601 does not contemplate their inclusion but specifically states:

> "<u>The purpose of this subchapter is to provide for making loans of water quality enhancement funds authorized by Article III, Section 49-d-1, of the Texas Constitution, to political subdivisions of the state for use as state matching funds</u> for obtaining maximum federal grants for the construction of treatment works." (Emphasis supplied).

It is also noted that the proceeds realized from the sale of these bonds must be used in construction of treatment works exclusively, and we are aware of no exception that would include a waterworks system.

Your final question involves the possibility of amending Subchapter I of Chapter 21 of the Water Code to include bonds of such a non-profit corporation as here exists within the term "other obligations of a political subdivision."

While Article III, Sections 50 and 52, Texas Constitution, declares that the legislature has no power to give or to lend or to authorize the giving, lending or pledging of the credit of the state in aid of any person or corporation, whether municipal or other, the courts have held that it does not prohibit the legislature from authorizing a state or governmental agency to use the credit of the state for governmental, public or state purposes. <u>State v. Dallas</u>, 319 S.W.2d 767, affirmed, 160 Tex. 348, 331 S.W.2d 737 (1958); <u>Aransas Pass v. Keeling</u>, 112 Tex. 339, 247 S.W. 818 (1923); <u>Brazos River Conservation & Reclamation Dist. v. McCraw</u>, 126 Tex. 506, 91 S.W.2d 665 (1936); <u>Highway Comm. v. Vaughn</u>, 288 S.W. 875 (Tex.Civ.App.

1926, error ref.); 52 Tex.Jur. 754, State of Texas, Sec. 42.

Under the facts presented, and if a proper statutory enactment were enacted, the City of Houston would be contracting for public governmental services which it may legally perform and for which it is obligated under the law to provide. The contracts call for the improvement and enlargement of specific water and sewage systems owned and to be acquired by the City of Houston and for the benefit of the general public within such City, and in accordance with agreed contractual plans. The parties to the contracts are obligated in quid pro quo contracts. The City is authorized legally to so contract for such a public benefit and governmental purpose, and it therefore does not constitute a grant of money to the non-profit corporation for individual or private purposes or an unconstitutional lending or pledging of credit by the City in aid of the corporation. San Antonio River Authority v. Shepperd, 157 Tex. 73, 299 S.W.2d 920, 928 (1957).

It is therefore our opinion that the provisions of Subchapter I, Chapter 21, Subtitle C of the Texas Water Code (Sections 21.601 - 21.612) could be amended in such a way as to include bonds of such a non-profit corporation within the term "other obligations of a political subdivision" where the bonds offered for sale to the State are unconditionally secured by a contract with the political subdivision under the provisions of Article 1109j. As stated in Attorney General Opinion No. WW-1229(1961), the determination of what constitutes a public governmental purpose ". . . has been held to be primarily a legislative function subject to review by the courts when abused, and the determination of the legislative body of the matter has been held to be not subject to be reversed except in instances where such determination is palpably and manifestly arbitrary and incorrect. . ." See also in accord, Attorney General Opinion No. C-530(1965), and authorities therein cited, holding that the benefits to the state or governmental entity is in the nature of consideration and that the funds expended or loaned are not an unconstitutional gift or loan even though private persons are benefitted therefrom, and that the courts will look to the character of the use for which the money is expended or loaned, not who receives it. 81 C.J.S. 1148, States, Sec. 133.

# S U M M A R Y

Bonds of the Northwest Houston Water Supply Corporation issued pursuant to and supported by a contract with the City of Houston pursuant to the provisions of Article 1109j, V.C.S., are not to be considered as "other obligations" of the city as that term is used in Subchapter I, Chapter 21 of the Texas Water Code.

A certificate, appearing on the bonds of the Northwest Houston Water Supply Corporation, signed by the Mayor of the City of Houston to the effect that the City is unconditionally obligated to pay said bonds from ad valorem tax revenues of the City, is not sufficient to render such bonds "other obligations" of such city as that term is used in Subchapter I, Chapter 21 of the Texas Water Code.

A proper statutory amendment to Subchapter I, Chapter 21 of the Texas Water Code which would include bonds of such a non-profit corporation as herein described, and under the facts and conditions presented, within the term "other obligations of a political subdivision" as used in said Chapter could be upheld as not in contravention of Article III, Sections 50 and 52 of the Texas Constitution prohibiting the lending of credit to any individual, association or corporation.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Robert B. Davis
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Roger Tyler
William Craig
V. F. Taylor
Robert Lemens

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant